■ In the Matter of ALBERT MENDEL & SON, INC., Petitioner, v NEW YORK STATE DEPARTMENT OF AGRICULTURE AND MARKETS et al., Respondents. — Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the Commissioner of the State Department of Agriculture and Markets which permanently revoked petitioner's domestic animal health permit. In September, 1979, petitioner entered into a stipulation with the Department of Agriculture and Markets wherein petitioner agreed not to contest certain allegations of the department concerning petitioner's engagement in several frauds involving animal disease requirements. Petitioner also agreed to accept a two-year suspension of its domestic animal health permit to commence within 10 days after execution of the stipulation and agreement, and during this two-year period petitioner and its officers and agents were prohibited from engaging in any activities which require a domestic animal health permit. The stipulation allowed petitioner to engage in certain activities involving horses and cattle and required the issuance of a permit to petitioner at the expiration of the two-year suspension upon application by petitioner provided that the stipulation and the Agriculture and Markets Law were complied with during the suspension period and petitioner was otherwise qualified pursuant to section 90-d of the Agriculture and Markets Law. On September 12, 1979, a determination based upon this stipulation and agreement was signed by respondent Commissioner of the State Department of Agriculture and Markets. Thereafter, petitioner was served with a notice of hearing on or about July 16, 1980, and following a hearing the commissioner issued a determination permanently revoking its domestic animal health permit. The present proceeding was subsequently commenced seeking to annul this determination. Initially, petitioner contends that since its permit expired by its own terms on April 1, 1980 and it had not applied for a new permit prior to commencement of the permit revocation proceeding on July 16, 1980, it was neither an applicant nor a permittee and, therefore, the commissioner lacked jurisdiction to revoke its permit pursuant to section 90-e of the Agriculture and Markets Law. This statute, which empowers the commissioner to refuse or revoke a permit provides, in pertinent part, that "The commissioner after due notice and opportunity of hearing to the applicant or permittee may deny an application or revoke a permit" (Agriculture and Markets Law, § 90-e). This court has previously held that an expired license may be revoked (*Matter of Maine Sugar of Montezuma v Wickham,* 37 AD2d 381). In our view, the intent and effect of the stipulation and agreement entered into by the parties was to continue the commissioner's regulatory jurisdiction during the term of the suspension in regard to petitioner's compliance with the stipulation. To require, as petitioner urges, that the commissioner be precluded from proving petitioner's noncompliance with the stipulation until a new application for a permit is filed by petitioner could result in the unavailability of certain

evidence of noncompliance and frustrate the intention of the Legislature in enacting this legislation (see Agriculture and Markets Law, § 90-a). Accordingly, we conclude that the commissioner acted within his jurisdiction in revoking petitioner's permit. Petitioner also argues that there is an absence of substantial evidence to support the commissioner's determination. Pursuant to the stipulation petitioner and its officers and agents were prohibited from engaging in any activities which require a domestic animal health permit or acting with respect to any cattle dealing transaction as an agent or representative of anyone required to hold such a permit. A domestic animal health permit is required in order for any person to purchase, or deal in, or sell cattle or horses at wholesale (Agriculture and Markets Law, § 90-c). The record reveals that two months prior to execution of the stipulation, Ernest Mendel, petitioner's vice-president, engaged in negotiations with George Myers of Massachusetts to create a new corporation for purposes of conducting cattle sales in New York. While such a corporation was never formed, it does appear that Mendel and Myers entered into a business relationship after the stipulation became effective. Petitioner maintains that Mendel was employed by Myers as a salesman and that he only purchased or sold cattle outside New York State. Evidence at the hearing, however, indicates that two cattle purchases in New York were initially negotiated by Mendel and then paid for by Myers and another. Evidence was also introduced to show that although the cattle purchased in these transactions were originally charted to Myers in Massachusetts, some of the cattle were charted back to petitioner in New York. The commissioner also concluded that Mendel was involved in a joint venture with Myers conducting cattle dealings in New York State. In regard to this conclusion, evidence was presented at the hearing that prior to his involvement with Mendel the business done by Myers was about $1,000,000 a year while thereafter it was $3,500,000 and was generated from a wider geographical area; that on several occasions Mendel contributed working capital to the enterprise; that checks from petitioner totaling some $153,000 were given to Myers for which Myers originally gave no security; that Myers leased trucks from Mendel for $1 a year and did not pay the drivers' salaries or for insurance or fuel for the trucks; that up to a point Mendel paid for the services of an agent for the delivery of cattle in Puerto Rico; that at the beginning of their relationship Myers and Mendel divided the profits equally and thereafter the profits were divided into thirds with one third going to Mendel and two thirds going to Myers; and that upon dissolution of their relationship Mendel retained the new customers acquired during the enterprise and assumed the accounts receivable with respect to the transactions he had been involved in. Upon our review of the record, we find substantial evidence to support the determination of the commissioner and, therefore, it should not be disturbed. We also conclude that, in light of all the circumstances, the punishment imposed is not so disproportionate to the offense as to be shocking to one's sense of fairness and, consequently, the determination should be confirmed (*Matter of Pell v Board of Educ.*, 34 NY2d 222; *Matter of Kosher Bakers v Barber*, 79 AD2d 799). We have examined petitioner's remaining arguments and find them unpersuasive. Determination confirmed, and petition dismissed, without costs. Sweeney, J. P., Kane, Casey, Weiss and Levine, JJ., concur.