OPINION OF THE COURT
Edward H. Lehner, J.
The question raised herein is whether the Board of Responsibility, a body created by the New York City Board of Estimate (BOE) to review the "responsibility” of successful bidders on city contracts, should be permitted to continue a hearing after the bidder withdraws its bid. The court holds that the continuation of the hearing under the circumstances herein is not beyond the jurisdiction of that body, and accordingly denies the petition to stay further hearings.
*1006 FACTS
The defendant City of New York solicited bids for a contract for the construction of a sanitation garage. When the bids were opened on June 2, 1987, petitioner was the low bidder. Contracts and notice of award were then prepared by the city and the contract was executed by petitioner. However, the city did not deliver an executed contract nor the notice of award to petitioner, but rather on July 23, 1987 issued a notice rejecting all bids opened on June 2 on the ground that they were excessive.
The city thereafter readvertised the contract, and when the bids were opened on November 5, 1987, petitioner was again the low bidder. However, the city again did not award the contract to petitioner, but instead convened a Board of Responsibility (the Board) in January 1988 to determine whether petitioner was a "responsible” bidder, it being asserted that petitioner had furnished inaccurate answers on a questionnaire submitted in connection with the June bid and had submitted fraudulent backdated claim letters in connection with certain civil litigation.
Petitioner then instituted a CPLR article 78 proceeding in which it sought to enjoin the Board from proceeding, asserting that petitioner was entitled to enforce a contract based on the June bid. That proceeding before Justice Lebedeif was discontinued, petitioner’s counsel writing the following to the Justice: "We have also represented to respondents that petitioner will not commence any other action or proceeding based on the grounds alleged in the petition, seeking to prevent the Board of Responsibility from continuing the hearing. We further represent, as requested by respondents, that petitioner will not ask the Court to prevent the board from rendering its determination, unless such application is made on consent.”
Hearings then proceeded before the Board, which is comprised of representatives of the City Comptroller, the Corporation Counsel and the head of the agency involved in the contract, here the Commissioner of Sanitation. Hearings were held on 14 days, with a transcript of 1,200 pages and 56 exhibits introduced.
On April 25, 1988, after several months of hearings, petitioner withdrew its November bid, asserting that as a result of the delay it could no longer perform the contract at the bid price, and sought to terminate the proceedings before the Board. The Board, however, wishes to continue the hearings, *1007 desiring to take testimony from employees of petitioner, who its counsel indicates intend to exercise their right not to testify on Fifth Amendment grounds.
There is no dispute that petitioner had the right to withdraw the bid pursuant to section 105 of the General Municipal Law because no award of a contract was made within 45 days of the making of a deposit pursuant to the bid.
Petitioner asserts that since it no longer seeks the contract for which it bid, the Board has no jurisdiction to continue functioning in this matter. The city asserts that it should have the right to continue the hearings as, if the Board finds petitioner to be not responsible, petitioner will not be entitled to bid on city contracts for three years, and "it would be an extreme waste of resources for these proceedings to recommence de novo upon a future bid by the contractor” and such "a requirement would be extremely prejudicial to the City whose witnesses or counsel may leave City employment.”
THE STATUTE
Section 343 (a) of the New York City Charter provides that construction contracts involving more than $15,000 "shall be obtained only by contract on public letting founded on sealed bids under such regulations as shall be made by the board of estimate”. Subdivision (b) of the section provides in part as follows: "The agency letting the contract may reject all bids if it shall deem it for the interest of the city so to do; if not, it shall, without other consent or approval, award the contract to the lowest responsible bidder, unless the board of estimate by a two-thirds vote shall determine that it is for the public interest that a bid other than that of the lowest responsible bidder shall be accepted.”
Pursuant to the foregoing authorization, the BOE adopted regulations creating the Board of Responsibility, which provide in part as follows: "Upon the determination of the Board that a low bidder is not responsible, the head of the agency shall reject the bid. A finding by unanimous vote of the Board that a bidder is not responsible shall remain in effect for period of three (3) years from the date of issuance, unless the Board imposes a less restrictive disqualification. Further, a finding by a majority of the Board that a bidder is not responsible, shall remain in effect for a period of one (1) year from the date of issuance, unless the Board imposes a less restrictive disqualification. During such period of disqualifica *1008 tion, all agencies shall reject any bids from such bidders who have been found not responsible.” The regulations also provide that the failure of a bidder "to fully and faithfully cooperate with the Board shall be conclusive evidence of nonresponsibility.”
DISCUSSION
The stipulation in the prior article 78 proceeding does not prohibit the grant of the instant application as it only barred a future application "based on the grounds alleged in the petition.” Since the withdrawal of the bid occurred after the discontinuance of that proceeding, the basis for the within proceeding is different from that in the prior application.
The general rules relating to the issuance of a writ of prohibition were set forth in Matter of Doe v Axelrod (71 NY2d 484, 490 [1988]) as follows: "That extraordinary remedy is available only where there is a clear legal right, and only when an officer acts without jurisdiction or in excess of powers in a proceeding over which there is jurisdiction 'in such a manner as to implicate the legality of the entire proceeding’ * * *. The writ of prohibition does not lie as a means of seeking collateral review of a mere error of law in the administrative process, no matter how egregious that error might be * * * 'and however cleverly the error may be characterized by counsel as an excess of jurisdiction or power’ ”.
Even if the remedy of prohibition would otherwise properly lie, the writ does not issue as of right, but only in the sound discretion of the court. (Matter of Jacobs v Altman, 69 NY2d 733, 735 [1987]; Matter of Rush v Mordue, 68 NY2d 348, 354 [1986].) In exercising this discretion, a number of factors should be considered:
"The gravity of the harm which would be caused by an excess of power is an important factor to be weighed * * *. Also important, but not controlling, is whether the excess of power can be adequately corrected on appeal or by other ordinary proceedings at law or in equity * * *
"If, however, appeal or other proceedings would be inadequate to prevent the harm, and prohibition would furnish a more complete and efficacious remedy, it may be used even though other methods of redress are technically available”. (La Rocca v Lane, 37 NY2d 575, 579-580 [1975].)
Here the primary function of the Board is to determine whether the city should decline to enter into a contract with a *1009 low bidder because the bidder is not responsible, with the consequence of nonresponsibility being a bar to future public bidding for city contracts, the period depending on whether the finding is unanimous or by majority vote.
With the petitioner no longer seeking the contract for the construction of the sanitation garage, the question thus presented is whether the Board has jurisdiction to continue the proceeding solely to determine whether petitioner should be barred from future bidding.
In Matter of Maine Sugar v Wickham (37 AD2d 381 [3d Dept 1971]) the Commissioner of Agriculture and Markets commenced a proceeding to revoke petitioner’s license. After the petitioner’s license had expired, and at a time when no license renewal application was pending, the Commissioner revoked the license. The court rejected petitioner’s argument that the order should be vacated because it was made after the license had expired, ruling that: "Respondent is charged with a continuing statutory responsibility 'to suppress unfair and fraudulent practices’ in the sale of farm products * * *. It is important that respondent file an order either dismissing the proceeding or revoking the license * * * because the statute provides that respondent shall deny a new application for any person or corporation whose license has previously been revoked * * *. Since the administrative action was timely commenced, it should not be rendered void because the final determination was made after the expiration of the license.” (Supra, at 383-384.)
In Matter of Mendel & Son v New York State Dept. of Agric. & Mkts. (90 AD2d 567, 568 [3d Dept 1982]) the court also rejected a claim that a license could not be revoked after it had expired and that any determination must await a new application, the court ruling that such a requirement "could result in the unavailability of certain evidence of noncompliance and frustrate the intention of the Legislature in enacting this legislation”.
Here, petitioner contested the city’s claim of nonresponsibility by participating in these administrative proceedings for four months before seeking to moot the proceeding by withdrawing its bid. Since one of the functions of the Board is to prevent future bidding by contractors who are not responsible, which includes parties who are not pecuniarily responsible as well as those who do not "possess * * * moral worth” (Matter of Dairymen’s League Coop. Assn. v Perrini, 54 Misc 2d 400, *1010 401 [Sup Ct, NY County 1967]), the Board cannot be deprived of its jurisdiction by the unilateral act of petitioner withdrawing its bid. When it made a bid, it was aware that a procedure before the Board was a possibility, with the right of the Board to make a determination on "responsibility.” To rule as requested by petitioner would enable a bidder to observe the evidence introduced against him and then, at a late stage of the hearing, determine whether he wished a decision on the issue.
Thus, since petitioner has not clearly demonstrated the right to the writ of prohibition, and since the final determination of the Board can be adequately reviewed in an article 78 proceeding, the cross motion to dismiss is granted, and the petition is dismissed. The stay contained in the order to show cause is hereby vacated.