*4
 
 OPINION OF THE COURT
 

 Per Curiam.
 

 Petitioner, a Civil Court Judge charged with judicial misconduct, resigned from office instead of answering the complaint filed against her. The charges stem from petitioner’s statements to and financial dealings with a third party who was engaged in drug-dealing and money-laundering schemes, and her failure to report a cash gift of $1,500 from that party. Petitioner contends that the Constitution’s grant of authority to the Commission on Judicial Conduct to remove "judges” applies only to those sitting at the time the penalty is imposed, thereby rendering Judiciary Law § 47, which permits the Commission to exercise disciplinary jurisdiction over resigned Judges, unconstitutional. We reject petitioner’s constitutional challenge and conclude that the record fully supports respondent Commission’s determination that petitioner engaged in serious judicial misconduct warranting removal.
 

 Petitioner Lorraine Backal became a Civil Court Judge of the City of New York, Bronx County, on January 1, 1989. The charges against her are, in large part, based on transcripts of conversations between petitioner and Selwyn Wilson, her former driver. These conversations took place in petitioner’s home on three dates in late 1990 and were secretly recorded by Wilson, who was acting as an FBI informant.
 

 During the subject conversations, petitioner told Wilson that he was being sought by the FBI for questioning, that she would advise the FBI, if asked, that she does not know his whereabouts, that she would destroy her telephone book records pertaining to him, and that he should give vague and untruthful answers to FBI questions about information he learned during his tenure as petitioner’s driver. On the tapes, Wilson told petitioner that he was waiting for a shipment of 300 kilos of cocaine and asked petitioner for assistance and advice in "laundering” $700,000 in funds. Petitioner advised Wilson to hide the cash in a "tin box,” to "lay low” until the FBI investigation was over and to tell the FBI, if questioned about his acquisition of such a large amount of cash, that he had always saved money in a shoe box. Petitioner also agreed to safeguard $10,000 in cash for Wilson in her home. Upon returning the money to Wilson, petitioner accepted $1,500 as a gift. Petitioner failed to report this gift to the clerk of her court or to include it on her 1990 financial disclosure statement as required by the Judiciary Law and various other Rules and
 
 *5
 
 Codes
 
 (see,
 
 Judiciary Law § 211; Rules of Chief Administrator of Courts [22 NYCRR] § 100.5 [c] [3] [iii]; § 100.6 [c]; Code of Judicial Conduct, canon 5 [C] [4] [c]; 6 [C]; Rules of Chief Judge [22 NYCRR] § 40.2).
 

 Based on all of the foregoing conduct, the Commission on Judicial Conduct charged petitioner on October 24, 1994 with failing to observe high standards of conduct so as to preserve the integrity and impartiality of the judiciary in violation of section .100.1 of the Rules of the Chief Administrator of the Courts (the Rules) and canon 1 of the Code of Judicial Conduct (the Code), and failing to avoid impropriety and the appearance of impropriety and failing to conduct herself in a manner designed to preserve and promote public confidence in the integrity and impartiality of the judiciary, in violation of section 100.2 of the Rules and canon 2 of the Code. Petitioner was also charged with engaging in conduct prejudicial to the administration of justice, in violation of sections 100.1 and 100.2 of the Rules and canons 1 and 2 of the Code.
 

 On the date that petitioner’s answer to the complaint was due, she did not answer, but instead notified the Commissioner by letter that she was resigning from office. As a consequence, the Commission deemed the petition’s allegations admitted and concluded that petitioner had engaged in "venal conduct * * * inconsistent with the role of a judge and the proper administration of justice.” Because petitioner "departed from the high standards of conduct required of a judge and has damaged public confidence in the integrity of the judiciary,” the Commission determined that removal was the appropriate sanction. The Commission declined to address petitioner’s constitutional challenges, determining that, as an administrative agency, it lacked the power and competence to do so. Petitioner requested this Court’s review of the Commission’s determination and of her constitutional claims pursuant to article VI, § 22 (a) of the New York State Constitution.
 

 Judiciary Law § 47 grants the Commission on Judicial Conduct and this Court jurisdiction to remove a resigned Judge for 120 days from the date of her resignation.
 
 *
 
 Petitioner contends that this provision violates article VI, § 22 of this
 
 *6
 
 State’s Constitution, which generally refers to the discipline of "judges.” In petitioner’s view, the Constitution authorizes the Commission to remove only those holding office at the time that penalty is imposed, and provides no basis to exercise removal jurisdiction over
 
 former
 
 Judges once they have resigned. In effect, petitioner argues that resignation clears the slate and insulates a Judge from such discipline for misconduct in office. Contrary to petitioner’s argument, we conclude that Judiciary Law § 47’s grant of continued jurisdiction over former Judges comports with this State’s Constitution as well as its underlying policy.
 

 We begin our analysis with the general rule that "[a]n independent and honorable Judiciary is indispensable to justice in our society” (Rules of Chief Administrator of Courts [22 NYCRR] § 100.1). Judicial officers must observe "[standards of conduct on a plane much higher than for those of society as a whole”
 
 (Matter of Kuehnel v State Commn. on Judicial Conduct,
 
 49 NY2d 465, 469) because both the public’s perception of each Judge’s ability to serve as an impartial arbiter and the public’s respect for the judiciary as a whole are at stake.
 

 The State Constitution empowers the Commission on Judicial Conduct to "receive, initiate, investigate and hear complaints with respect to the conduct, qualifications, fitness to perform or performance of official duties of any
 
 judge or justice
 
 of the unified court system, in the manner provided by law” (NY Const, art VI, § 22 [a] [emphasis added]). The Commission may remove a Judge for cause — conduct that includes "misconduct in office, persistent failure to perform his [or her] duties, habitual intemperance, and conduct, on or off the bench, prejudicial to the administration of justice”
 
 (id.).
 

 We conclude that this constitutional grant of authority to the Commission to discipline and remove "judges” necessarily and logically covers all acts of misconduct undertaken by a Judge while serving in office. The fact that a particular Judge may no longer hold that office at the time removal is sought or recommended by the Commission, due to the Judge’s postmisconduct resignation, does not preclude the Commission or this Court from exercising their respective disciplinary powers.
 

 That the Constitution was designed to include former Judges within the persons subject to removal for misconduct is appar
 
 *7
 
 ent from its provisions governing the consequences of removal from judicial office. Article VI, § 22 (h) of our Constitution provides that a Judge "removed by the court of appeals shall be ineligible to hold other judicial office.” The grant of continued jurisdiction over a resigned Judge contained in Judiciary Law § 47 provides the Commission and this Court with an indispensable means to enforce the constitutional "ineligibility” mandate against those Judges who, by resigning, might otherwise attempt to circumvent that bar and seek future office to the public’s detriment. Moreover, petitioner’s position that resignation and a promise not to seek future office clears the slate would encourage Judges to disregard the high standards of conduct they are bound to observe and "avoid the consequences of removal for cause by racing to resign” — a practice rejected by this Court
 
 (Matter of Quinn v State Commn. on Judicial Conduct,
 
 54 NY2d 386, 395). Petitioner’s view also ignores the greater institutional goals sought to be achieved by the constitutional provisions governing judicial discipline.
 

 Those constitutional provisions recognize that once a member of the judiciary engages in misconduct, discipline is warranted to maintain the public’s confidence in the integrity of the judiciary as an institution. That goal is served by permitting the Commission to follow through with removal proceedings whenever a Judge engages in serious misconduct while in office and despite a Judge’s resignation or pledge not to seek a future judicial post.
 

 Turning to petitioner’s attack on the sufficiency of the evidence of misconduct, we conclude, after a full review of the record, that each of the charges is established. As an initial matter, the allegations of the complaint were deemed admitted by petitioner’s failure to file an answer
 
 (see,
 
 22 NYCRR 7000.6 [b];
 
 Matter of Petrie v State Commn. on Judicial Conduct,
 
 54 NY2d 807). Thus, the only remaining inquiry is whether the admitted allegations establish that petitioner failed to abide by the standards of conduct necessary to preserve the integrity and independence of the judiciary and engaged in conduct prejudicial to the administration of justice justifying her permanent removal from office.
 

 As a member of this State’s judiciary governed by exacting standards of honor and propriety, petitioner was obligated to conduct herself at all times in a manner that reflected her own personal respect for the letter and spirit of the law. Manifestly, advising a known lawbreaker on preserving the fruits of his crime and furnishing a hiding place for those fruits
 
 *8
 
 are acts that are antithetical to that obligation. Similarly, accepting a cash gift for participating in the wrongdoer’s concealment efforts and agreeing to mislead law enforcement authorities is behavior that borders on criminal conduct and is certainly inconsistent with a Judge’s pledge to uphold the law. It is an insult to the intelligence of the public to suggest that a Judge who places herself and her associates above the law in this manner does not prejudice the administration of justice or at least create "an appearance of impropriety” by her actions.
 

 The facts that petitioner’s misconduct occurred in her home where she may have had an expectation of privacy and that her statements were made to a person she considered to be a close associate do not mitigate the wrongfulness of her conduct
 
 (see, Matter of Mazzei,
 
 81 NY2d 568). Our ethical codes and precedent set forth with no equivocation that Judges are accountable "at all times” for their conduct — including their conversation — both on and off the Bench (Code of Judicial Conduct, canon 2 [A];
 
 Matter of Kuehnel v State Commn. on Judicial Conduct,
 
 49 NY2d 465, 469,
 
 supra).
 
 Equally clear is that no "family, social, or other relationships” shall carry influence over the Judge’s judicial conduct or judgment (Rules of Chief Administrator of Courts [22 NYCRR] § 100.2 [b]). In words suited to the case before us, we stated in
 
 Matter of Steinberg
 
 (51 NY2d 74) that "a Judge cannot simply cordon off [her] public role from [her] private life and assume safely that the former will have no impact upon the latter * * *. Wherever [she] travels, a Judge carries the mantle of [her] esteemed office with [her], and, consequently, [she] must always be sensitive to the fact that members of the public, including some of [her] friends, will regard [her]
 
 words and actions
 
 with heightened deference simply because [she] is a Judge”
 
 (id.,
 
 at 81 [citation omitted] [emphasis added]). Where, as here, a Judge privately conveys the message that she is willing to conspire to flout the law, removal is an appropriate, and perhaps even the only appropriate, remedy
 
 (see, Matter of Levine,
 
 74 NY2d 294).
 

 Petitioner’s remaining contentions lack merit.
 

 Accordingly, the determined sanction of removal should be accepted, without costs.
 

 Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Smith, Levine and Ciparick concur in Per Curiam opinion.
 

 Determined sanction accepted, without costs, and Honorable Lorraine Backal removed from the office of Judge of New York City Civil Court, Bronx County.
 

 *
 

 This section provides in relevant part that: "[t]he jurisdiction of the court of appeals and the commission pursuant to this article shall continue notwithstanding that a judge resigns from office after a determination of the commission that the judge be removed from office has been transmitted to the chief judge of the court of appeals, or in any case in which the commission’s determination that a judge should be removed from office shall be
 
 *6
 
 transmitted to the chief judge of the court of appeals within one hundred twenty days after receipt by the chief administrator of the courts of the resignation of such judge.”