OPINION OF THE COURT
 

 Bellacosa, J.
 

 This statutory construction case poses the question whether the State Ethics Commission has jurisdiction under Executive Law § 94 (12) over an employee who has resigned from State service. Because the governing statute does not confer such extended jurisdiction over a former employee expressly or by
 
 *201
 
 necessary implication, we affirm the determinations of the lower courts.
 

 Petitioner Flynn was the Adjutant General of the State Division of Military Affairs. In April 1990, the State Ethics Commission began an investigation into allegations that he had accepted free tickets to an antique show sponsored by a private organization and held at the Park Avenue Armory in New York City. The Armory was under Flynn’s State military authority. In November 1990, the Commission sent Flynn a notice pursuant to Executive Law § 94 (12) detailing its allegations and gave him 15 days to respond. He did so in early December 1990.
 

 More than a year and a half later, in July 1992, without any intervening contact from the Commission, Flynn retired from State service. In December 1992, two years after Flynn’s response to the initial notice and more than five months after his retirement, the Commission sent a notice of reasonable cause to Flynn and to the Governor, pursuant to Executive Law § 94 (12) (b). The notice alleged that Flynn had violated Public Officers Law § 73 (5) by attending the antique show in December 1989 and not paying the per person admission charge of $500 for his guest and himself. Section 73 (5) prohibits, generally, the receipt of anything of value over $75 under circumstances where one could reasonably infer a promise of influence or a reward for official action. Additionally, Flynn was accused of violating Public Officers Law § 74 (3) CO, in that accepting the free admission while ultimately bearing responsibility for the approval of leases of the Armory resulted in an "impression that any person can improperly influence him or unduly enjoy his favor in the performance of his official duties” (Public Officers Law § 74 [3] [f]).
 

 Having retired from State service, Flynn petitioned to prohibit the Commission from proceeding any further against him at this time and circumstance. He argued that the Commission did not have jurisdiction over former State officers and employees. Supreme Court granted the petition, prohibited all pending and future actions relating to Flynn’s former State employment, and nullified all Commission actions taken after Flynn’s retirement in July 1992. The Appellate Division affirmed, holding that the statutory scheme creating the Commission reveals no legislative intent to extend jurisdiction beyond the end of service of the officer or employee. The Court reasoned that a resignation functionally effectuates the ultimate goal of that portion of the reform legislation — departure from State service
 
 *202
 
 of employees actually or even potentially responsible for unethical conduct, albeit without the employee necessarily admitting guilt or being found guilty.
 

 The Commission now appeals by permission of this Court. We affirm the order of the Appellate Division and hold that the investigatory and adjudicative authority of the State Ethics Commission under Executive Law § 94 (12) ends when the subject of a Commission ethics probe leaves State service.
 

 The State created this specially charged Commission in 1987 as part of a sweeping ethics reform package known as the Ethics in Government Act (L 1987, ch 813; Executive Law § 94). Among the purposes of the enactment was "to restore public trust and confidence in government” (Governor’s Mem approving L 1987, ohs 813, 814, 1987 McKinney’s Session Laws of NY, at 2727;
 
 see also, Forti v New York State Ethics Commn.,
 
 75 NY2d 596, 603).
 

 The Commission is not only a creature of statute, it is a uniquely and narrowly invested entity; it thus lacks powers not granted to it by express or necessarily implicated legislative delegation
 
 (see, Matter of Foy v Schechter,
 
 1 NY2d 604, 612 [" 'since the jurisdiction of an administrative board or agency consists of the powers granted it by statute, a determination is void and subject to collateral attack where it is made either without statutory power or in excess thereof ”]; 1 Cooper, State Administrative Law, at 41-42 [1965]). Aptly applied to the Ethics Commission, we have said "[a] creature[ ] of the Legislature within the executive branch, can act only to implement [its] charter
 
 as it is written” (Matter of Tze Chun Liao v New York State Banking Dept.,
 
 74 NY2d 505, 510 [emphasis added]). Jurisdiction to act will be inferred only when it is "required by
 
 necessary implication” (Matter of City of New York v State of New York Commn. on Cable Tel.,
 
 47 NY2d 89, 92 [emphasis added]).
 

 Nowhere do the enactments in the Executive Law or Public Officers Law, created and modified respectively by the Ethics in Government Act, expressly confer jurisdiction on the Commission with respect to
 
 former
 
 State officers and employees. Executive Law § 94 prescribes that the Commission "shall have and exercise the powers and duties set forth in this section
 
 only with respect to statewide elected officials and state officers and employees,
 
 as defined in sections seventy-three and seventy-three-a of the public officers law, and candidates for statewide elected office, and with respect to the political party chairman” (Executive Law § 94 [1] [emphasis added]). Section 73 (1) (h) of
 
 *203
 
 the Public Officers Law defines the term "statewide elected official,” and section 73 (1) (i) defines "state officer or employee.” Neither section contains any reference to employees who have left State service. Moreover, Public Officers Law § 73-a (1) (a) and (c), which define the same terms in the financial disclosure context, also contain no reference to former State employees.
 

 Thus, giving the pertinent provisions their ordinary meaning, we discern no express or implied jurisdictional reach beyond the actual tenure and service of an employee. Rather, the precise and core grant of statutory authorization to investigate and punish unethical conduct allows the Commission to accomplish the salutary purpose of exposing corrupt or unethical employees in the ranks of State government. If the employees are rooted out by adjudication or by inducing a voluntary departure, a major objective is served. As the Appellate Division observed, the petitioner in this case essentially fulfilled a principal goal of the statute by resigning, albeit without expressly acknowledged or adjudicated guilt, but without the necessity either of a largely academic trumpeting of power by the Commission.
 

 Despite the plain language route we take to the disposition of this statutory construction case, the Commission nevertheless urges the Court to infer continuing, unlimited jurisdiction by reference to the Legislature’s authorization for a "civil penalty in an amount not to exceed ten thousand dollars” on "any person who knowingly and intentionally violates” a series of provisions (Public Officers Law § 73 [14]; Public Officers Law § 73 [5]; § 74 [3] [f]). Relying on this Court’s decision in
 
 Matter of Brooklyn Audit Co. v Department of Taxation & Fin.
 
 (275 NY 284), the Commission suggests that, in all cases where a statutory scheme authorizes additional or incidental sanctions beyond the primary goal of removal from office, the investigating body should be deemed also to have been given an implied grant of unlimited continuing jurisdiction. In
 
 Matter of Brooklyn Audit (supra),
 
 the State Department of Taxation and Finance sought to fire a tax examiner pursuant to the Civil Service Law
 
 (see,
 
 Civil Service Law former § 22). Notwithstanding the employee’s resignation during the pendency of the civil service proceeding, the Court held that the Department retained jurisdiction to issue a subpoena. The Court reasoned:
 

 "If the facts were that the only result of the proceeding would be removal from office, and that nothing survived a resignation, then the latter
 
 *204
 
 might terminate the proceeding, a continuation of which would be futile”
 
 (Matter of Brooklyn Audit Co. v Department of Taxation & Fin.,
 
 275 NY 284, 286,
 
 supra).
 

 Because the Civil Service Law also provided that a removal would foreclose the tax examiner’s future civil service employment (Civil Service Law former § 14), the Court stated that the proceeding could continue notwithstanding the resignation
 
 (id.; see also, Matter of Maine Sugar v Wickham,
 
 37 AD2d 381, 383-384).
 

 One key distinction here is that no such additional penalty flows from the action of the Ethics Commission, since directed removal would not, as in
 
 Matter of Brooklyn Audit,
 
 carry a lifetime ban from State service
 
 (see also,
 
 NY Const, art VI, § 22 [h];
 
 Matter of Backal,
 
 87 NY2d 1). Instead, the additional penalty the Ethics Commission urges us to recognize as effectuating a grant of extended jurisdiction is the potential imposition of a fine. We decline to rest such a significant and unlimited interpretation of the Commission’s jurisdictional charter on such a strained and slim reed, which is substantively different from the lifetime bans expressly prescribed by statute and constitutional mandate in other areas expressly imposing a future disqualification. Had the Legislature wished to add a similar extended power to the mission of this specially charged Commission, it could have and should have explicitly so prescribed. Open-ended jurisdiction is too important and fundamental to leave to indefinite interpretive molding.
 

 Notably, when the Legislature wishes to extend jurisdiction over former judicial officials in this branch of government, it does so explicitly. Judiciary Law § 47 expressly grants the Commission on Judicial Conduct and this Court some qualified extended removal authority over Judges, notwithstanding resignation from office. In this way, the Legislature has ensured, by specific and limited mandate, that unethical Judges would not escape only the most significant and ultimate sanction merely by resigning. Thus, that extended jurisdiction allows this Court to impose the lifetime bar from future judicial office rooted in the Judicial Conduct Commission’s limited extension of power
 
 (cf., Matter of Backal, supra).
 
 Nothing comparable appears in the otherwise comprehensive scheme established by the Ethics in Government Act. Thus, this Court should not create continued jurisdiction in the first instance and, in effect, extend it to the Commission.
 

 Relevantly, too, the express grant of statutory authority under the Judiciary Law carries with it a specific time limit
 
 *205
 
 beyond which the Judicial Conduct Commission is divested of jurisdiction (Judiciary Law § 47). Thus, that Commission has only 120 days from the date of a resignation to make and transmit a removal determination to the Chief Judge for service on the resigned Judge, publication of the determination, and request for Court of Appeals review, if any (Judiciary Law §§47, 44 [7]). The Ethics Commission’s argument for judicially inferred extended jurisdiction without some expressed legislative source and mandate would allow the Commission’s power to be exercised virtually on an unlimited time basis. That cannot be; surely, authorization for it is not within the legislative contemplation. Yet, it is where the Commission’s theory would logically and necessarily take the principle.
 

 As a last parallel argument, the Commission suggests that the "revolving door” provision in Public Officers Law § 73 (8) warrants the conclusion that the Ethics Commission harbors continuing jurisdiction in all cases under the Ethics in Government Act. Section 73 (8) prohibits former State officers and employees from appearing before their former agencies within two years of leaving State service. Because the statute nowhere specifically states that the Commission has jurisdiction over such former employees, the Commission proposes that such specific authorization is likewise unnecessary in the provision before us in this case. The syllogism fails, however, because the "revolving door” provision, by its essential nature, necessitates jurisdiction over former employees and officers.
 

 If the Commission wishes to exert timeless, across-the-board jurisdiction, it should seek that extraordinary power and delegation explicitly from the Legislature, the source of its existence and special, limited charter.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Simons, Titone, Smith, Levine and Ciparick concur.
 

 Order affirmed, with costs.