Spain, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Sullivan County) to review a determination of respondent which found that petitioner violated certain racing regulations.
Petitioner, a doctor of veterinary medicine licensed to practice at racetracks in this state (see Racing, Pari-Mutuel Wagering and Breeding Law § 309), worked for many years in the 1990s as the veterinarian for trainer Joseph Minieri at barn Double A at Monticello Raceway. On three race dates in November 1999, postrace urine tests of four horses trained by Minieri, for whom petitioner administered veterinary care, tested positive for naloxone, an analgesic forbidden to be administered to horses within seven days of the start of a racing program (see 9 NYCRR 4120.2 [f]; 4043.1 [h]; 4043.2 [f]). Respondent’s initial investigation focused on Minieri, whose license was suspended for several intervals. However, by May 2000, Minieri—along with grooms and horse owners connected to barn Double A—implicated petitioner in the injection of unknown substances into horses on race days. During that time petitioner gave statements to investigators for respondent admitting to administering naloxone to horses after races, but never before races, and denied administering the drug to any of Minieri’s horses.
On December 29, 2000, respondent mailed petitioner an order to show cause charging him with nine counts of violating its rules and seeking to revoke his license and to expel him from racetracks in this state (see Racing, Pari-Mutuel Wagering and Breeding Law § 309 [2] [e]; 9 NYCRR 4102.3 [a] [1], [4]; 5402.3). Five of the charges pertained to allegations that on five dates in *770 November 1999, petitioner injected four horses with naloxone within 24 hours of the start of a racing program, knowing that the respective horses were scheduled for a race in that program. Petitioner was also charged with conspiring to violate respondent’s rules, failing to report the conspiracy, failing to keep written records of the subject injections, and failing to maintain records of his animal visits, diagnoses and treatments during 1999 and 2000. Additional charges related to his alleged failure to give accurate and complete testimony and records to respondent and systematic and unlawful administration of restricted substances to racehorses on race days during the past several years (see 9 NYCRR 4119.7 [a] [5]; [d]; 4119.8 [g]; 4119.9 [a]).
Following a hearing held over the course of several months, a Hearing Officer concluded that respondent had proven petitioner’s violation of the charges and recommended that he be suspended and his license revoked (9 NYCRR 5402.6 [d], [e]). Respondent thereafter adopted the Hearing Officer’s findings (see 9 NYCRR 5402.8), adding that petitioner had “regularly, unlawfully administered restricted substances at Monticello Raceway to racehorses on race days over the preceding several years, a pattern of violations and corrupt and fraudulent conduct that is detrimental to the best interests of harness racing and which renders him an undesirable person in racing” (see 9 NYCRR 4119.7 [a], [b]; 4119.8, 4119.9 [a]).
Petitioner thereafter commenced this CPLR article 78 proceeding in Supreme Court (Meddaugh, J.), which properly reviewed petitioner’s potentially dispositive claims related to lack of jurisdiction, bias and the amendment of the charges and, after rejecting them, transferred the proceeding to this Court to address the substantial evidence issue (see CPLR 7804 [g]).
As an initial matter, we find no error in the Hearing Officer’s refusal to recuse himself as petitioner failed to make a motion directly to respondent as required by the governing procedures (see 9 NYCRR 5402.7 [a]). In any event, petitioner did not substantiate .his claim that the Hearing Officer had participated in the investigation of these charges. Additionally, the Hearing Officer’s position as an investigator with respondent prior to becoming a Hearing Officer in November 1999 (the same month the positive drug tests here occurred) did not render him biased or require disqualification (cf. Matter of Beer Garden v New York State Liq. Auth., 79 NY2d 266, 279 [1992]; Adika v Corbisiero, 154 AD2d 299, 300 [1989], lv denied 75 NY2d 707 [1990]). With regard to petitioner’s reliance on certain e-mail messages in November 1999 transmitted by and among the Hearing Officer and other émployees of respondent related to the November 2, *771 1999 positive drug test result, these messages clearly referred to Minieri and not petitioner. While the Hearing Officer’s e-mail response was unfortunate and might have given the impression that he had prejudged the trainer (see Matter of Beer Garden v New York State Liq. Auth., supra at 278), this familiarity with the facts regarding the trainer did not require disqualification when petitioner was later charged (see Matter of Donlon v Mills, 260 AD2d 971, 974 [1999], lv denied 94 NY2d 752 [1999]). Further, the Hearing Officer stated on the record that he did not follow nor was he involved in the investigation against petitioner, and a review of the record of these proceedings supports the conclusion that they were conducted in a fair and impartial manner (see 9 NYCRR 5402.5 [a]).
Also rejected are petitioner’s contentions that respondent lacked jurisdiction over him because he did not receive notice of the charges until after his license had expired by its own terms on December 31, 1999 and that respondent could not revoke an expired license. While framed under the rubric of jurisdiction, in reality petitioner’s claim is that the penalty of license revocation was not available once his license expired. However, respondent has clear authority to suspend or revoke licenses which it has issued based upon conduct committed by a licensee during the term of the license (see Racing, Pari-Mutuel Wagering and Breeding Law § 309 [2] [e]; see also 9 NYCRR 4102.3 [a] [1]; [b]). Since the administrative action was timely commenced, it is not rendered void merely because the final determination (with penalties) was made after petitioner allowed his license to expire by not renewing it and, indeed, this Court has recognized that an expired license may be revoked (see Matter of Maine Sugar of Montezuma v Wickham, 37 AD2d 381, 383-384 [1971]; see also Matter of Mendel & Son v New York State Dept. of Agric. & Mkts., 90 AD2d 567, 567 [1982], appeal dismissed 58 NY2d 970 [1983], lv denied 58 NY2d 610 [1983]). Neither the governing statutes and regulations nor case law supports the conclusion that allowing a license to expire divests the issuing agency of authority to impose penalties against the licensee, including revocation or suspension. Moreover, the expiration of the license had no bearing on other penalties—such as fines or expulsion from harness racing—which are undeniably available against persons “whether licensed by the commission or not” (9 NYCRR 4102.3 [b]; see 9 NYCRR 4102.1, 4119.7 [a]; 4119.8).
Next, we agree with Supreme Court’s extended analysis that the Hearing Officer properly permitted respondent, during its presentation of its case at the hearing, to amend the time period alleged in the order to show cause to charge that petitioner *772 in each incident had injected the horses with naloxone “within seven (7) days, and within 24 hours” of the race as proscribed by 9 NYCRR 4120.2 (f) (see 9 NYCRR 5402.3 [b] [2] [ii]). The original charges stated that the injections had been administered “within 24 hours” of the racing program, citing 9 NYCRR 4120.2 (c), which so proscribes injections of certain specified substances, but does not pertain to naloxone. Respondent requested the amendment to correctly cite the governing regulation’s subdivision—4120.2 (f)—and to conform to the medical proof following testimony by the director of respondent’s drug testing and research program. The Hearing Officer issued a written decision granting the amendment, finding no prejudice to petitioner, and adjourned the hearing for a considerable period to permit him to defend against the amendments. Petitioner never requested that any of respondent’s witnesses be recalled for further cross-examination. In our view, under all of the circumstances, petitioner received fair notice and reasonable time to prepare and present a defense to the amended charges (see Matter of Block v Ambach, 73 NY2d 323, 332-333 [1989]).
Finally, a review of the ample, credible evidence and testimony reveals that, in all respects, respondent’s determination was based upon substantial evidence, including expert veterinarian testimony that, based upon the five respective positive postrace test results, naloxone had been administered to the horses within the proscribed period before each respective race and definitely within seven days (see 300 Gramatan Ave. Assoc. v State Div. Human Rights, 45 NY2d 176, 181 [1978]). The sworn statements and testimony of Minieri and other barn employees demonstrated that petitioner was essentially the exclusive veterinarian for the horses that Minieri trained, and petitioner was seen carrying syringes and injecting the horses prior to their respective races, using the others as lookouts and as persons to hold or tie the horses down. Petitioner’s denial of ever injecting these or any horses prior to races, like some of the variations between certain witnesses’ statements to investigators and their hearing testimony and allegations of witness bias, presented credibility issues for the Hearing Officer to resolve (see Matter of Block v Ambach, supra at 335; Matter of Berenhaus v Ward, 70 NY2d 436, 443-444 [1987]; Matter of Goldsmith v DeBuono, 245 AD2d 627, 630 [1997]). The remaining charges concerned petitioner’s documented failure to keep records, which was not refuted. We have similarly reviewed petitioner’s remaining contentions and find that they lack merit.
Crew III, J.P., Carpinello, Rose and Kane, JJ., concur.
*773 Adjudged that the determination is confirmed, without costs, and petition dismissed.