Matter of Gonzalez v New York State Gaming Commn. (2019 NY Slip Op 01466)





Matter of Gonzalez v New York State Gaming Commn.


2019 NY Slip Op 01466


Decided on February 28, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 28, 2019

526551

[*1]In the Matter of MIKE A. GONZALEZ, Also Known as MIGUEL A. GONZALEZ and MANUEL GONZALEZ, Petitioner,
v
NEW YORK STATE GAMING COMMISSION, Respondent.

Calendar Date: January 9, 2019

Before: Egan Jr., J.P., Clark, Mulvey, Devine and Rumsey, JJ.


Cooper & Paroff PC, Kew Gardens (Ira G. Cooper of counsel), for petitioner.
Letitia James, Attorney General, Albany (Brian D. Ginsberg of counsel), for respondent.



MEMORANDUM AND JUDGMENT
Mulvey, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Schenectady County) to review a determination of respondent, among other things, revoking petitioner's license to participate in thoroughbred racing for a period of at least 10 years.
Petitioner, a jockey agent licensed by respondent, was arrested and charged with computer trespass (170 counts) and tampering with a sports contest in the second degree (170 counts). The charges arose out of allegations that petitioner paid bribes to a New York Racing Association (hereinafter NYRA) employee between January 2014 and April 2015 to obtain unlawful use of the employee's password to NYRA's computer system, which petitioner then accessed on at least 170 different occasions. Petitioner ultimately pleaded guilty to and was convicted of one count of attempt to commit computer trespass.
Respondent served petitioner with notice of a hearing to determine whether his license to participate in thoroughbred racing should be revoked and a fine imposed based on the conduct that led to the criminal charges. After a hearing, a Hearing Officer issued a report recommending that petitioner pay a fine of $25,000 and that his license be revoked, suspended and/or that respondent refuse to issue petitioner a new license for a period of three years. Respondent accepted the Hearing Officer's findings, fined petitioner $25,000, revoked his license to participate in thoroughbred horse racing in the state and restricted him from applying for a new license for a period of no less than 10 years. Petitioner commenced this CPLR article 78 proceeding seeking review of respondent's determination. Finding that it raised a question of [*2]substantial evidence, Supreme Court transferred the proceeding to this Court (see CPLR 7804 [g]).[FN1]
Respondent had jurisdiction to hold the hearing and revoke petitioner's license. The Legislature endowed respondent with "broad powers" regarding its authority over "all . . . persons engaged in gaming activity" (Racing, Pari-Mutuel Wagering and Breeding Law § 100). The Legislature further provided that respondent shall have "general jurisdiction over all gaming activities within the state and over the corporations, associations and persons engaged therein" (Racing, Pari-Mutuel Wagering and Breeding Law § 104 [1]), including the authority "[t]o hear and decide promptly and in reasonable order all license . . . applications, and causes affecting the granting, suspension, revocation or renewal thereof, of corporations, associations or persons engaged or seeking to engage in gaming activity" (Racing, Pari-Mutuel Wagering and Breeding Law § 104 [2]; see Racing, Pari-Mutuel Wagering and Breeding Law § 220 [2]). "This [C]ourt has previously held that an expired license may be revoked" (Matter of Albert Mendel & Son v New York State Dept. of Agric. & Mkts., 90 AD2d 567, 567 [1982] [citation omitted], appeal dismissed 58 NY2d 970 [1983], lv denied 58 NY2d 610 [1983]; see Matter of Main Sugar of Montezuma v Wickham, 37 AD2d 381, 383-384 [1971]). Respondent was not divested of authority, and the administrative action at issue — which was timely commenced and pertained to conduct engaged in by petitioner during the term of his license — was not void, merely because the hearing and final determination occurred after petitioner's license expired by its own terms (see Matter of Sachs v New York State Racing & Wagering Bd., Div. of Harness Racing, 1 AD3d 768, 771 [2003], lv denied 2 NY3d 706 [2004]; Matter of Main Sugar of Montezuma v Wickham, 37 AD2d at 383-384).
Petitioner had a full and fair opportunity to be heard and he received due process. Although petitioner argues that the Hearing Officer erred in denying him the opportunity to present witnesses via video conference from respondent's Belmont Park location in Nassau County, petitioner had previously objected to the use of video conferencing for the hearing and indicated that it would be easier for counsel, petitioner and his witnesses to be present at the hearing location in Schenectady County rather than the proposed Manhattan location. Respondent argued that the hearing should take place in Manhattan and witnesses or parties should be allowed to appear by video conferencing. Based on the parties' arguments, the Hearing Officer changed the location of the hearing to Schenectady County, but permitted video conferencing from two locations in Manhattan, as deemed necessary. Thereafter, petitioner requested, based on the location of some of his witnesses, that the Hearing Officer provide the option of video conferencing from Belmont Park. That request did not explain who the witnesses were, what testimony they would offer, why they were unable to testify from Schenectady County or Manhattan, or why petitioner did not raise this request during the previous discussions. Considering petitioner's original position and the generality of his request, the Hearing Officer did not err in refusing to modify her ruling to allow video conferencing from an additional location.
Petitioner also was not deprived of due process by the Hearing Officer's refusal to admit into evidence certain letters attesting to petitioner's character. Despite exclusion of those letters, petitioner submitted the live testimony of four witnesses who attested to his good character. Thus, regardless of whether the letters were timely disclosed (see 9 NYCRR 4550.4), petitioner was not deprived of due process by the exclusion of cumulative evidence (see Matter of Casamassima v New York State Dept. of Health, Admin. Review Bd. for Professional Med. Conduct, 135 AD3d 1200, 1201 [2016], lv denied 27 NY3d 912 [2016]; see also Cor Can. Rd. Co., LLC v Dunn & Sgromo Engrs., PLLC, 34 AD3d 1364, 1365 [2006]; Matter of Kussius v Walker, 247 AD2d 911, 912 [1998]).
We disagree with petitioner's assertion that respondent improperly deviated from its precedent, as a penalty must be imposed based on the individual facts of the case and the cited cases presented different circumstances. This Court "will not disturb a penalty unless it is so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one's sense of fairness" (Matter of Elbaz v New York State Dept. of Health, 156 AD3d 972, 973 [2017] [internal quotation marks and citations omitted]; see Matter of Czermann v New York State Racing & Wagering Bd., 68 AD3d 1580, 1583 [2009], lvs denied 14 NY3d 709, 710 [2010]; Matter of Case v New York State Racing & Wagering Bd., 61 AD3d 1313, 1314 [2009], lv denied 13 NY3d 705 [2009]). Respondent found incredible petitioner's testimony that he did not know his conduct was wrong or illegal. Indeed, petitioner initially lied to investigators by saying that he did not have access to NYRA's computer system, and he eventually pleaded guilty to a crime requiring intent (see Penal Law §§ 110.00, 156.10). Respondent fined petitioner $25,000, despite the statute permitting a fine in that amount "for each violation" (Racing, Pari-Mutuel Wagering and Breeding Law § 250). Although petitioner was charged with having accessed the computer system 170 times, his misconduct was much greater, as petitioner admitted that he first gained access to the system in 2011 and accessed it once a day or more. Evidence indicated that this access provided him an advantage over other jockey agents because he could use the information — before it was available to other agents — to find a mount for his jockey. Respondent found that this permitted petitioner to tamper with many sports contests. The publicity garnered by petitioner's conduct, as well as other evidence, refutes his argument that his conduct was minimal and had little bearing on the perceived integrity of the sport. Considering all the circumstances, although the penalty was severe, we cannot conclude that it should be disturbed.
Egan Jr., J.P., Clark, Devine and Rumsey, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.



Footnotes

Footnote 1: Although the petition raised a substantial evidence question, petitioner has abandoned any argument on that issue by failing to raise it in his brief.