■ In the Matter of MORRIS GOLDSMITH, Petitioner, v BARBARA A. DEBUONO, as Commissioner of the New York State Department of Health, et al., Respondents. [665 NYS2d 727] —Spain, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of the Board of Examiners of Nursing Home Administrators which, *inter alia,* revoked petitioner's New York nursing home administrator's license.

In June 1990 petitioner, operator and administrator of Oak Hollow Nursing Home in Suffolk County, was reported by two nursing assistants at Oak Hollow to have inappropriately touched a 35-year-old female patient who is blind and mentally retarded (hereinafter the patient). The Department of Health (hereinafter the Department) conducted an investigation which resulted in a report of patient abuse. Thereafter, a finding was made on behalf of respondent Commissioner of Health (hereinafter the Commissioner) that petitioner had abused the patient on or about the final week of April 1990 during the noon hour in that he inappropriately fondled the patient's buttocks.

Petitioner, neither admitting nor denying the allegations, waived his right to a hearing. In March 1993 a civil penalty of $2,000 was assessed against petitioner of which $1,000 was suspended. Notably, the order assessing the penalty also indicated that all of the documents relating to this matter would be forwarded to the appropriate committee on professional conduct pursuant to Public Health Law § 2803-d (6) (g).

By petition and charges dated October 25, 1994, which were directed to the Board of Examiners of Nursing Home Administrators (hereinafter the Board), the Commissioner formally charged petitioner with unethical conduct as defined in 10 NYCRR 96.1 (m) (2) and (6) in that he inappropriately fondled the buttocks of a patient at Oak Hollow "on a date during the last week of April, 1990, at approximately 12:00 p.m." in violation of Public Health Law § 2803-d. The petition further alleged that petitioner's actions constituted patient abuse as set forth in 10 NYCRR 81.1 (a). A hearing was held before an Administrative Law Judge (hereinafter ALJ) who issued a report concluding that petitioner abused the patient by inappropriately touching her and recommended a fine of $2,000. The Board adopted the ALJ's report and, in addition to the fine of $2,000, revoked petitioner's license to practice nursing home administration. Petitioner then commenced this CPLR article 78 proceeding requesting an annulment of the determination, and the case was transferred to this Court by Supreme Court.

Initially, we reject petitioner's contention that the record does not provide substantial evidence to support the finding that petitioner committed "unethical conduct" in violation of Public Health Law § 2897 (1) (f) and 10 NYCRR 96.1 (m). The standard used by reviewing courts for findings made by an administrative agency is whether the determination is supported by substantial evidence (see, *300 Gramatan Ave. Assocs. v State Div. of Human Rights*, 45 NY2d 176, 179). A determination is supported by substantial evidence when the proof is " 'so substantial that from it an inference of the existence of the fact found may be drawn reasonably' " (*id.*, at 179, quoting *Matter of Stork Rest. v Boland*, 282 NY 256, 273). The term "substantial evidence" requires the trier of fact to weigh the quality and quantity of the proof, meaning such relevant proof as a "reasonable mind may accept as adequate to support a conclusion" (*300 Gramatan Ave. Assocs. v State Div. of Human Rights, supra*, at 180). Whether an administrative agency's findings are supported by substantial evidence is a question of law for the courts to decide (see, *id.*, at 181).

Here, the first of the Department's two witnesses, a female

nursing assistant, testified that on two separate occasions she observed petitioner, from the hallway through the open door to the patient's room, put his hand on the patient's "bottom". The witness also testified that although she was not sure of the dates of the incidents, she was questioned by a Department investigator several weeks later; the investigator's report reflects that the interview took place on June 5, 1990 and states that she told the investigator that she thought petitioner's conduct was an expression of affection. However, at the time of the hearing her testimony was that she was unsure if the touchings were sexual in nature or acts of affection. The Department's only other witness, a male nursing assistant, testified that on 8 to 10 occasions leading up to the end of April 1990, he had observed petitioner enter the patient's room and close the door, emerging several minutes later; he also stated that this conduct made him curious. He further testified as follows: that on one of these occasions he entered the room through the closed door to bring the patient her lunch tray and observed petitioner sitting on the side of the bed with his right hand on her inner right thigh between her legs and his left hand on her right shoulder. No one else was in the room. The patient was wearing shorts and a tee shirt; she never wore underwear. Her shorts came to above her knees and his hand was on the flesh of her right thigh, partly under her shorts. Petitioner stood up and without saying anything quickly walked out of the room, not by the door to the hallway but by the connecting bathroom; significantly, the witness stated that his view was unobstructed. Although he acknowledged that in 1990 he gave an investigator a different version of the incident in which he reported that petitioner was "fondling the [patient's] buttocks with his right hand between her legs", he indicated at the hearing that he didn't think there was any difference between what he reported and his hearing testimony, explaining that the term "buttocks" seemed to be the appropriate word at the time of the report.

Petitioner testified that he occasionally visited the patient during the lunch period, that people came in and out of her room regularly during this time and that the purpose of this type of visit was to ensure that the residents of the facility were receiving proper care. He denied ever touching the patient's buttocks affectionately or otherwise. However, he acknowledged that he did place his hand on her shoulder when she became agitated to calm her down; further, the patient had no control over her physical movements and would randomly and unintentionally "kick out", and on one occasion he placed his hand on her ankle to prevent her from kicking him.

Petitioner further denied that he entered the patient's room 8 to 10 times and closed the door, and also denied that he ever touched her inner thigh under her shorts.

Clearly, the ALJ was faced with conflicting testimony and resolved the credibility issues against petitioner. Upon a careful review of the record we conclude that the Board's determination is supported by substantial evidence. The finding that petitioner had improperly touched the patient in question is amply supported by the testimony of the Department's second witness, who testified that he directly observed petitioner touch the patient on the upper inner right thigh. Contrary to petitioner's suggestion, the witness testified that his view was unobstructed. Such eyewitness testimony is clearly " 'the kind of evidence on which responsible persons are accustomed to rely in serious affairs' " (*People ex rel. Vega v Smith*, 66 NY2d 130, 139, quoting *National Labor Relations Bd. v Remington Rand*, 94 F2d 862, 873, *cert denied* 304 US 576). Further, it is settled law that courts will not decide questions of credibility or weigh conflicting testimony, as such matters are solely within the province of the finder of fact (*see, Matter of Berenhaus v Ward*, 70 NY2d 436, 443-444; *Matter of Moss v Chassin*, 209 AD2d 889, 891, *lv denied* 85 NY2d 805, *cert denied* 516 US 861; *Matter of Chua v Chassin*, 215 AD2d 953, 954, *lv denied* 86 NY2d 708).

Here, the Department's witnesses expressly denied having any animosity toward petitioner, and denied knowing of any alleged animosity between petitioner and his daughter. The ALJ, as the administrative factfinder, was in the best position to assess this testimony. Likewise, petitioner's arguments concerning the witnesses' delay in giving statements to the investigator, and the alleged discrepancies between the second witness's statement to the investigator and his testimony at the hearing, merely affects the weight of his testimony. It was within the province of the ALJ to credit the witnesses' explanations that the delay was the result of a fear of being fired. As to the alleged discrepancies, the second witness described the location of petitioner's hand on the patient's inner thigh and its position, and he stated that he did not see any difference between his initial report and his testimony. The ALJ was entitled to credit this explanation as well.

Next, we reject petitioner's claim that the Department did not act within a reasonable time and, as a result, denied him due process. State Administrative Procedure Act § 301 (1) states that "all parties shall be afforded an opportunity for [a] hearing within a reasonable time". However, to succeed on a

claim of denial of due process rights due to administrative delay, the petitioner must demonstrate that "he [or she] sustained actual prejudice as a result of the delay" (*Matter of Moss v Chassin, supra,* at 890). Here, petitioner contends that he has suffered progressive memory loss since 1992 and that because of the Department's delay, he was unable to recall details of the event. Notably, the record reveals that he was able to testify with a fair degree of specificity in an alert and assertive manner. Although he was not able to recall dates and times, he was able to recall seeing and appropriately touching the patient on occasion to calm her and denied having ever touched her buttocks. In addition, petitioner contends that due to the delay there may have been documents or witnesses who may have established that petitioner was in another location on the occasions in question; however, as noted, this Court has held that "actual prejudice" must be shown (*see, id.*). The fact that petitioner could have been prejudiced by the delay is insufficient to find that he was denied due process.

We also reject petitioner's contention that he was denied a fair hearing in that the ALJ was biased against him as evidenced by her rulings against him, her discrediting of his testimony, and her findings and conclusions. Every person is entitled to an impartial hearing in an administrative setting (*see, Matter of Warder v Board of Regents,* 53 NY2d 186, 197, *cert denied* 454 US 1125). A Hearing Officer shall be disqualified where bias has been shown; however, "[t]he appearance of impropriety shall not constitute bias and shall not be grounds for disqualification. Hearing officers * * * are presumed to be free from bias" (10 NYCRR 51.17 [a]). Moreover, mere allegations of impartiality are insufficient to set aside an administrative determination (*see, Matter of Moss v Chassin, supra,* at 890; 10 NYCRR 51.17 [b]). "[T]here must be a factual demonstration supporting the allegation and proof that the outcome flowed from it" (*Matter of Moss v Chassin, supra,* at 890), and the party claiming bias has the burden of demonstrating it (*see,* 10 NYCRR 51.17 [b]).

Here, petitioner made a motion for the ALJ to recuse herself, alleging that she was biased as a result of a prior matter upon which she sat which involved petitioner's attorney; the ALJ denied the motion. Notably, there is no documentary evidence in the record which supports petitioner's assertion that the ALJ exhibited animosity toward his attorney during the prior proceeding. In the prior matter, petitioner's attorney successfully had the ALJ disqualified due to her participation in a nonjudicial election while she was sitting on the Bench; this

fact alone, however, does not automatically lead to the conclusion that the ALJ was biased in the instant case. As for petitioner's other allegations of personal bias, the record does not support such bias. The ALJ's conduct throughout the hearing was commendably civil and judicious, despite the overly zealous behavior of petitioner's attorney. On the issue of possible bias, it is significant that the ALJ recommended a lighter penalty than the Board ultimately imposed on petitioner.

Finally, we reject petitioner's contention that a penalty of $2,000 and the revocation of his nursing home administrator's license was excessive under the circumstances and, therefore, shocking to one's sense of fairness. Although petitioner cites cases where lesser or similar penalties were imposed for more egregious conduct, this Court has held on several occasions that "[t]he fact that lesser penalties may have been imposed in other cases is immaterial since each case is judged according to its own peculiar facts and circumstances" (*Matter of Binenfeld v New York State Dept. of Health*, 226 AD2d 935, 937, *lv dismissed* 88 NY2d 1052; *see, Matter of Siddiqui v New York State Dept. of Health*, 228 AD2d 735, 739, *lv denied* 89 NY2d 804). Once a person is found guilty as charged and a penalty has been imposed, the test used by the reviewing court is whether such penalty is " 'so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness' " (*Matter of Pell v Board of Educ.*, 34 NY2d 222, 233, quoting *Matter of Stolz v Board of Regents*, 4 AD2d 361, 364). The Court of Appeals has defined a sanction that is "shocking to one's sense of fairness" as being "so grave in its impact on the individual subjected to it that it is disproportionate to the misconduct * * * or to the harm or risk of harm to the * * * public" (*Matter of Pell v Board of Educ., supra*, at 234). Here, petitioner was found to have abused a blind, retarded 35-year-old patient at the nursing home he administered. Despite his age and otherwise clean record, we conclude that the serious nature of the offense amply supports the penalty imposed.

We have considered petitioner's remaining contentions and find them to be without merit.

Mikoll, J. P., White, Casey and Yesawich Jr., JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.