■ In the Matter of HIGHLAND CARE CENTER, INC., Petitioner, v BARBARA A. DeBUONO, as Commissioner of Health, et al., Respondents. [699 NYS2d 547] —Peters, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County), to review a determination of respondent Commissioner of Health which denied petitioner's application for adjustment of its Medicaid reimbursement rates.

The Highland Care Center, formerly known as the Woodhull Care Center, a skilled nursing facility in Queens County (hereinafter the facility) operating since 1975, was cited by the Department of Health (hereinafter DOH) in 1978 for numerous violations and other operating deficiencies. Considerable sums were expended in 1979 to bring the facility up to the minimum standards set forth in 10 NYCRR part 415 (hereinafter the Health Code), as authorized by the provisions of Public Health Law § 2862. As a result, petitioner's nonpayroll operating expenses rose from approximately $200,000 in 1978 to approximately $735,000 in 1979.

Recognizing that 1979 would not be a "base year" from which Medicaid reimbursement rates would be set for the following two years, the facility sought increased funding from DOH in 1981 in the form of adjusted reimbursement rates. Petitioner also sought increased rates for those expenditures made during the years 1980 and 1981 to ensure the facility's continued compliance with pertinent Health Code standards.

DOH agreed to provide petitioner with additional funding by adjusting its Medicaid reimbursement rates contingent upon the results of a "Management Assessment Review" (hereinafter MAR; see, 10 NYCRR former 86-2.14 [a] [7]).* The MAR resulted in a finding that petitioner's higher nonpayroll operat-

---

* The MAR process, which is no longer in effect, was designed for the purpose of determining the existence of an exception to the usual method of calculating Medicaid reimbursement rates by justifying a departure from the practice of basing such calculations upon a facility's average expenditures during the two previous years.

ing costs in 1979 were caused by its efforts to correct Health Code violations at the facility—a recognized exception to the prospective Medicaid reimbursement rate procedure (*see*, 10 NYCRR former 86-2.14). DOH thereafter conducted an audit of petitioner's operating costs for 1979, resulting in the finding that petitioner had incurred increased payroll expenses for that year of $631,331 of which $233,619 related to its correction of violations.

While this audit was progressing, negotiations proceeded between counsel for the facility and Joanne Quan, who was the Deputy Director of the Division of Health Care Financing. These negotiations were reflected in a memorandum to respondent Commissioner of Health (hereinafter respondent), dated July 13, 1981 (hereinafter termed the Quan memorandum), stating that reimbursement for the facility was to be predicated upon the results of a MAR previously conducted, now subject to a confirmatory audit, relating to the increase in nonpayroll costs incurred to correct code deficiencies cited during 1979. In such memorandum, it states that "[o]ne-time costs (such as stripping floors) will be paid for only in the 1979 rates. Those costs which represent ongoing costs (such as new maintenance services) will be carried over and reflected in the 1980 and 1981 rates."

DOH retroactively increased petitioner's 1981 reimbursement rates in the amount of $233,619 as a one-time reimbursement rate adjustment to account for the facility's increase in 1979 nonpayroll costs. Petitioner ultimately appealed this determination, seeking additional funding for not only 1979 but also for 1980 and 1981 based, in part, on its interpretation of the Quan memorandum. DOH maintained that any reimbursable, nonpayroll costs relating to the correction of operating deficiencies that might recur in 1980 and 1981 were properly reimbursed under the typical rate-setting system because both 1980 and 1981 were "base years" used to set the rates for 1982 and 1983. Administrative hearings ensued, resulting in the denial of petitioner's demand for additional funding beyond that which was already awarded. This determination was affirmed by respondent, prompting this CPLR article 78 proceeding.

Petitioner's contention that the Quan memorandum reflects an agreed-upon methodology for calculating the amount of its reimbursement rates for not only 1979 but also for 1980 and 1981 is without merit. Petitioner asserts that its calculations reflect that $227,218.50 of the $233,619 determined to be reimbursable for extraordinary expenses incurred in 1979 represents "recurring expenses" which the facility expended in

1980 and 1981. According to its reading of such memorandum, DOH should have reimbursed it for these "ongoing costs" in the 1980 and 1981 rates. While we acknowledge that State officials may, in some instances, settle litigation by entering into binding agreements which involve adherence to a specific reimbursement rate or formula, such agreements will not be upheld if "such commitment is illegal or involves an impermissible delegation of the authority and responsibility of those officials" (*Matter of Beekman-Downtown Hosp. v Whalen*, 44 NY2d 124, 133-134; *see, Matter of Westledge Nursing Home v Axelrod*, 68 NY2d 862, 865). Even if we interpret this agreement as petitioner contends, we could not find DOH to be bound by Quan's representations since they would evince an impermissible delegation of authority to her.

Similarly without merit is the contention that petitioner is entitled to a declaratory judgment in the nature of mandamus to direct DOH to conduct a MAR and audit of petitioner's expenditures during 1980 and 1981 to properly enforce the Quan memorandum. Mandamus to compel an agency or officer's performance of a ministerial act will only be granted after it has been determined that "the petitioner possesses a clear legal right to the relief sought and [that] the agency or officer has a corresponding nondiscretionary duty to grant the relief requested" (*Matter of Van Aken v Town of Roxbury*, 211 AD2d 863, 864, *lv denied* 85 NY2d 812; *see*, CPLR 7803 [1]; *see also, Matter of Mullen v Axelrod*, 74 NY2d 580, 583). Having failed to show its legal entitlement to a MAR proceeding or audit of its 1980 and 1981 accounts, coupled with our finding that the performance of such procedures requires the exercise of a discretionary power rather than the implementation of a ministerial act, we next address whether the award granted is supported by substantial evidence.

Petitioner presented the testimony and affidavit of its accountant, its president, its managing partner and its attorney, all of whom asserted that petitioner incurred nonpayroll expenses in 1979 beyond the amount for which it was reimbursed and that "recurring expenses" in 1980 and 1981 entitled it to additional reimbursement. Respondents presented the affidavit of Anthony Tibaldi, who conducted the audit of the facility's 1979 operating costs, along with the audit and its numerous work papers. Further included were two affidavits of William Gormley, who represented DOH in negotiations that culminated in the Quan memorandum. Upon our review of this evidence, we cannot conclude that the system of audits, review and application of established accounting principles were not

sufficiently supported so as to constitute the requisite quantum of substantial evidence that a " 'reasonable mind may accept as adequate to support a conclusion' " (*Matter of Goldsmith v DeBuono*, 245 AD2d 627, 628, quoting *300 Gramatan Ave. Assocs. v State Div. of Human Rights*, 45 NY2d 176, 180). In so finding, we note that the records for the facility were not reliable and that numerous costs could not be substantiated. Having failed to sustain its burden of demonstrating that it had incurred additional expenses for which it was not properly reimbursed or that the one-time adjustment was irrational, flawed or in violation of any statute, regulation or established policy, there exists no basis upon which we would disturb the determination rendered.

Mercure, J. P., Spain, Carpinello and Graffeo, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.