■ In the Matter of NIELS H. LAUERSEN, Petitioner, v ANTONIA C. NOVELLO, as Commissioner of Health of New York State, et al., Respondents. [739 NYS2d 780] —Peters, J.P. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of the Hearing Committee of respondent State Board for Professional Medical Conduct which revoked petitioner's license to practice medicine in New York.

Petitioner, a physician board certified in obstetrics and gynecology, received a notice of hearing and statement of charges from the Bureau of Professional Medical Conduct (hereinafter BPMC) alleging voluminous counts each of gross negligence, gross incompetence, negligence and incompetence, as well as allegations of excessive treatment, fraudulent practice, moral unfitness and a failure to properly maintain records. These charges stem from the obstetrical, prenatal, preoperative and operative care and treatment that petitioner rendered to seven patients between 1984 and 1999.

Following 12 days of hearings, the Hearing Committee of respondent State Board for Professional Medical Conduct (hereinafter Hearing Committee) recommended to respondent Commissioner of Health that petitioner's license be temporarily suspended pursuant to Public Health Law § 230 (12) on the ground that he was an imminent danger to the public. The Commissioner, following this recommendation, suspended petitioner's license pending a further hearing. Petitioner challenged the suspension by order to show cause. Thereafter, the first of several court orders was issued, directing respondent Department of Health to have a new Hearing Committee and Administrative Law Judge (hereinafter ALJ) preside over the imminent danger hearing. As the challenge to the Commissioner's interim determination proceeded through the courts, it was ultimately agreed, first by the courts and later by the second Hearing Committee, that petitioner's license be summarily suspended in a more modified manner than that originally determined. Thereafter, the Hearing Committee issued its final determination which sought to revoke petitioner's

license to practice medicine in New York. This CPLR article 78 proceeding followed.

The gravamen of petitioner's appeal concerns allegations of bias of constitutional dimension. It is axiomatic that "[e]very person is entitled to an impartial hearing in an administrative setting" (*Matter of Goldsmith v DeBuono*, 245 AD2d 627, 631) and there exists a presumption that hearing officers and committee members are free from bias (*see*, 10 NYCRR 51.17 [a]); mere allegations are not sufficient (*see, id.; see also, Matter of Kole v New York State Educ. Dept.*, 291 AD2d 683, 686; *Matter of Sunnen v Administrative Review Bd. for Professional Med. Conduct*, 244 AD2d 790, 791, *lv denied* 92 NY2d 802). "Rather, the party alleging bias must set forth a factual demonstration supporting the allegation as well as prove that the administrative outcome flowed from it * * *" (*Matter of Sunnen v Administrative Review Bd. for Professional Med. Conduct, supra* at 791 [citations omitted]; *see, Matter of Kole v New York State Educ. Dept., supra* at 686; *Matter of Goldsmith v DeBuono, supra; Matter of Moss v Chassin*, 209 AD2d 889, *lv denied* 85 NY2d 805, *cert denied* 516 US 861).

Petitioner's first claim of bias concerns Emanuel Friedman, BPMC's medical expert. Allegedly, some of the medical records under review here were previously scrutinized by Friedman at the request of Lenox Hill Hospital. Petitioner contends that Friedman's prior evaluation of the care that petitioner rendered to these patients should have precluded him from testifying as BPMC's expert. We disagree. Friedman's prior evaluation for Lenox Hill Hospital was fully explored at the hearing; Friedman even admitted that he had preconceived ideas about the quality of care that petitioner rendered, yet felt that he could be impartial in his review of any new information gleaned from this hearing. With no dispute that Friedman had the requisite knowledge and experience to testify about the care and treatment rendered, it remained within the province of the Hearing Committee to accept or reject such testimony (*see, Matter of Goldsmith v DeBuono, supra* at 630). As the quantum of evidence supporting the Hearing Committee's ultimate determination consisted of substantial evidence in addition to the testimony elicited from Friedman, there is no proof that the administrative outcome flowed from any alleged bias (*see, Matter of Sunnen v Administrative Review Bd. for Professional Med. Conduct, supra* at 791).

Nor do we find a sufficient showing of petitioner's second claim of bias pertaining to Michael Golding, chairperson of the Hearing Committee. Contending that he was partial due to his

numerous prior appearances as an expert for BPMC against clients of the law firm now representing petitioner, petitioner's counsel argues that the animus between his firm and Golding is demonstrated by a letter that petitioner's counsel sent to Golding in connection with another proceeding. We find this proffer insufficient to warrant Golding's recusal. While the letter, initiated by petitioner's counsel, is riddled with personal attacks, the record does not reflect that Golding recalls receiving or responding to it. Moreover, he denied both knowing petitioner's attorney or harboring any bias against him. Lacking sufficient evidence to "overcome the presumption of honesty and integrity accorded to administrative body members" (*id.* at 792; *see, Matter of Moss v Chassin*, 209 AD2d 889, 890, *supra*), the claim must fail.

While the interaction between petitioner's counsel and the ALJ was disputatious, her recusal was not warranted. Clearly, counsel for petitioner triggered the contentiousness. The lengthy record reveals proper legal rulings made by the ALJ throughout the hearing and a lack of any interchange which would support a claim of bias or prejudice. Notably, despite the ALJ's ruling precluding cross-examination of a patient concerning a medical malpractice action initiated against petitioner, we find the Hearing Committee to have been keenly aware of such lawsuit prior to the commencement of testimony. As it was within the province of the Hearing Committee to evaluate the credibility of the testimony rendered, we cannot conclude that the refusal to allow cross-examination on this subject constituted an error so prejudicial that it permeated the underlying proceeding sufficiently to render it unfair (*see, Matter of Jean-Baptiste v Sobol*, 209 AD2d 823, 824). While impartiality "is a core guarantee of due process" (*Matter of 1616 Second Ave. Rest. v New York State Liq. Auth.*, 75 NY2d 158, 161), we cannot condone the continued course of conduct engaged in by petitioner's counsel in his attempt to create an appearance of impropriety sufficient either for disqualification or reversal by this Court.*

We further reject petitioner's constitutional claim premised upon a denial of equal protection. He asserts that 10 NYCRR

---

* We shall not address allegations of bias against Thomas Kornmeyer, another member of the Hearing Committee, since any newfound objection to his service must be deemed waived by petitioner's failure to object or move for his recusal at the time of the hearing (*see, Matter of Kole v New York State Educ. Dept.*, *supra* at 686; *Matter of Kabnick v Chassin*, 223 AD2d 935, 936, *affd* 89 NY2d 828). Had this issue been properly preserved, we would have nonetheless found no basis for the claim (*see, Matter of Moss v Chassin*, 209 AD2d 889, 890, *supra*).

51.17 does not include "the appearance of impropriety" as a circumstance under which a hearing officer or committee member should be disqualified while comparable regulations governing discipline in other professions so provide. To the contrary, we find that the same standards of disqualification apply to members of hearing committees for other similarly situated licensed professionals (*see, Matter of Hughes v Suffolk County Dept. of Civ. Serv.*, 74 NY2d 833, 834, *amended* 74 NY2d 942; *Matter of Donlon v Mills*, 260 AD2d 971, 974, *lv denied* 94 NY2d 752; *see generally, Matter of Claffey v Commissioner of Educ.*, 142 AD2d 845, 846). As not "every appearance of impropriety in administrative adjudications violates due process" (*Matter of 1616 Second Ave. Rest. v New York State Liq. Auth., supra* at 164), we find no constitutional infirmity here.

Finally, we find that the determination rendered is supported by substantial evidence. With respect to patient A, the Hearing Committee properly relied on the testimony of not only the delivery room nurse present with that patient, but also the CT scan and the testimony of Peter Kalina, a radiologist, who confirmed Friedman's opinion that it was petitioner's improper use of forceps that caused the newborn's skull fractures, subcutaneous hemorrhages and hemorrhagic contusions. Moreover, such nurse further testified, in detail, that petitioner, with intent to deceive, requested her to change the time indicated on a printout which noted his initial application of forceps.

Similarly, the Hearing Committee's determination to credit the testimony of patient B who recounted that petitioner performed 13 laparoscopies upon her when petitioner admitted to recalling no more than three, was fully supported. With further reliance upon an insurance report which indicated that petitioner had performed at least six laparoscopies on patient B, we find the requisite substantial evidence to exist in support of all the charges sustained.

Substantial evidence also underlies the determination that the care rendered to patient C was negligent in that petitioner failed to perform a pregnancy test prior to having patient C continue on the drug Danocrine, failed to properly screen her for gestational diabetes and, upon delivery of her baby, inappropriately used fundal pressure in the presence of shoulder dystocia which resulted in Erb's palsy.

Also unavailing is petitioner's challenge to the findings concerning patients D, E, F and G. Sufficient evidence supports the Hearing Committee's conclusion that petitioner's hysterec-

tomy operation on patient E and his removal of normal cysts from patients E, F and G constituted gross negligence, negligence and/or excessive treatment, and supported the determination that petitioner repeatedly entered information in his operative reports that was either not confirmed or contradicted in the pathology report. Finally, the record reflects substantial evidence supporting a failure to have maintained adequate records for several of these patients.

With each of the Hearing Committee's findings supported by the necessary quantum of evidence (*see, Matter of Rivera [State Line Delivery Serv.—Roberts]*, 69 NY2d 679, 682, *cert denied* 481 US 1049), we find that, despite the existence of contrary testimony (*see, Matter of Richstone v Novello*, 284 AD2d 737, 739), there exists no basis upon which we would disturb the determination rendered.

Carpinello, Mugglin, Rose and Lahtinen, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.