In the Matter of NISARUDDIN KHAN, Petitioner, v NEW YORK STATE DEPARTMENT OF HEALTH et al., Respondents. [794 NYS2d 145]—

Kane, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of the Hearing Committee of the State Board for Professional Medical Conduct which, inter alia, revoked petitioner's license to practice medicine in New York.

The Bureau of Professional Medical Conduct (hereinafter BPMC) charged petitioner, a physician licensed to practice in New York and specializing in ophthalmology, with 17 specifications of professional misconduct. After an extensive hearing, a Hearing Committee of the State Board for Professional Medical Conduct sustained nine specifications. Based on the Committee's findings, petitioner's medical license was revoked.

Petitioner commenced this proceeding challenging that determination.

Petitioner first claims that he was deprived of a fair hearing because BPMC's expert witness was biased against him. The alleged cause of this bias was that petitioner bid on a medical practice a decade earlier allegedly driving up the price the expert eventually paid for that practice. The expert testified that he recalled that a doctor with the same last name had bid on the practice and he eventually realized it may be the same person as petitioner, but that he and petitioner had never met or spoken and he had no animosity toward petitioner as a result of the alleged "bidding war." Petitioner's testimony established that his final bid on the practice was $300,000 and the expert paid $450,000, making it unlikely that petitioner was the competitor who drove the cost up to the eventual sale price. The expert's alleged bias goes to the weight of his testimony, not its admissibility (*see Matter of Lauersen v Novello*, 293 AD2d 833, 834 [2002]). The Committee was presented with information of the expert's alleged bias and could use it to assess his credibility (*see Matter of Cohen v Mills*, 271 AD2d 826, 828 [2000]; *Matter of Brigham v DeBuono*, 228 AD2d 870 [1996], *lv denied* 89 NY2d 801 [1996]), which it did by finding no evidence of bias and largely crediting his medical testimony.

The statement by BPMC's counsel that petitioner would be calling an expert did not unfairly prejudice petitioner. The statement was made in good faith, based on correspondence from petitioner's counsel listing his potential expert witnesses, and petitioner was permitted to make a statement explaining that he could not hire an expert for financial reasons.

Petitioner also alleges that bias by two members of the Committee affected his hearing. "[C]ommittee members are presumed to be free from bias" (10 NYCRR 51.17 [a]; *see Matter of Lauersen v Novello, supra* at 834). Petitioner has the burden of providing factual support demonstrating bias and proof that the administrative outcome flowed from such bias (*see Matter of Maglione v New York State Dept. of Health*, 9 AD3d 522, 523 [2004]; *Matter of Lauersen v Novello, supra* at 834). An administrative determination will only be annulled on an allegation of bias if prejudice so permeates the hearing as to render it unfair (*see Matter of Maglione v New York State Dept. of Health, supra* at 523; *Matter of Jean-Baptiste v Sobol*, 209 AD2d 823, 824 [1994]).

Committee members have the right to question witnesses and use their expertise to analyze the evidence, though they may not substitute their expertise for the evidence (*see Matter of*

*Weisenthal v New York State Bd. of Regents*, 249 AD2d 712, 715 [1998], *lv denied* 92 NY2d 808 [1998]). In response to petitioner's testimony that he had never seen a patient with a detached retina who did not exhibit flashes or floaters, the Committee chair stated that he had previously experienced two detached retinas and never experienced those symptoms. This comment was addressed on recross-examination of petitioner, where he agreed with an authoritative text that up to 50% percent of patients with a detached retina may not have those particular symptoms but will exhibit other symptoms. As petitioner subsequently acknowledged that the chair's personal medical experience could comport with his understanding of that particular condition, that brief comment did not demonstrate any bias by the Committee chair (*see id.*).

Petitioner claims that another Committee member exhibited bias against him by harshly questioning him and criticizing his techniques or procedures before the evidence was fully presented, and that this bias arose after petitioner's counsel caught the member sleeping twice during the hearing. He also claims that this member should have been disqualified for sleeping. While the record seems to support the allegation that the member fell asleep for two to three minutes during the direct examination of BPMC's expert, there is no proof that the member dozed on a subsequent day of testimony. The member had ample opportunity to assess that witness's credibility through the approximately 20 hours of testimony he gave. Any testimony the member missed could be obtained through reading the transcript of that testimony (*see* 10 NYCRR 51.11 [d] [9] [permitting hearing to continue in absence of one member with member later obtaining missed material by reviewing evidence and transcripts]), and petitioner was not prejudiced because the member missed testimony from BPMC's witness.

As for the allegedly harsh questioning of petitioner, the member actively and evenly questioned both BPMC's expert and petitioner. Although the member was prone to lecture or pontificate on various medical subjects, there was no indication that his statements or questions exhibited any bias against petitioner or related to any resentment due to counsel's criticism of his nodding off during the hearing. Petitioner failed to overcome the presumption of honesty and integrity accorded the members of the Committee in order to prove that he was denied a fair hearing (*see Matter of Lauersen v Novello*, 293 AD2d 833, 835 [2002], *supra*; *Matter of Sunnen v Administrative Review Bd. for Professional Med. Conduct*, 244 AD2d 790, 791-792 [1997], *lv denied* 92 NY2d 802 [1998]).

Petitioner further contends that he was improperly denied access to quality assurance records in BPMC's files. BPMC's files "relating to the investigation of possible instances of professional misconduct shall be confidential and not subject to disclosure at the request of any person" (Public Health Law § 230 [10] [a] [v]). A regulation provides that for administrative hearings regarding alleged professional medical misconduct "there shall be no disclosure" except as specifically provided (10 NYCRR 51.8 [a]). The limited exceptions to this rule require disclosure of documentary evidence which the other party "intends to introduce at the hearing" (10 NYCRR 51.8 [b] [1]). There is no question that BPMC complied with its duty under that regulation and there was no requirement that it provide any further documents, especially considering that quality assurance records are statutorily privileged and protected from civil disclosure (*see* Education Law § 6527 [3]; Public Health Law § 2805-m; *Galin v Chassin*, 217 AD2d 446, 447 [1995]).

Petitioner contends that BPMC waived this confidentiality by providing petitioner, as is apparently its policy, all quality assurance documents in its file which appear to be exculpatory. This gratuitous limited disclosure did not waive the confidentiality for undisclosed quality assurance records, as BPMC intended to preserve the privilege for those records. Since waiver requires the intentional relinquishment of its known right of confidentiality (*see Little v Hicks*, 236 AD2d 794, 795 [1997]), petitioner was not entitled to disclosure of quality assurance records. In any event, he sought records related to his complication rate, but that rate was irrelevant to the charges which dealt with misconduct relating to the care of specified patients.

Mercure, J.P., Spain, Carpinello and Rose, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.