(April 20, 2006)

■ In the Matter of L. MARIO DIBLASIO, M.D., Respondent, v ANTONIA C. NOVELLO, as Commissioner of the New York State Department of Health, et al., Appellants. [814 NYS2d 51]—

Order and judgment (one paper), Supreme Court, New York County (Shirley Werner Kornreich, J.), entered October 22, 2004, which granted the CPLR article 78 petition seeking to compel respondent Office of Professional Medical Conduct (OPMC) to comply with an order of the Administrative Hearing Officer directing OPMC to turn over its investigative file for in camera review, unanimously reversed, on the law, without costs, the petition denied and the proceeding dismissed.

This article 78 proceeding arose out of professional misconduct proceedings commenced against petitioner L. Mario DiBlasio, M.D., a physician, by the New York State Department of Health's Office of Professional Medical Conduct, which acts as the prosecutorial arm of the Department. The specifications filed against petitioner alleged, inter alia, that he negligently misinterpreted a mislabeled x ray of a specific patient, resulting in an inaccurate report being issued and the subsequent improper placement of a chest tube on the wrong side of the patient's body.

An administrative hearing on the charges was commenced before Administrative Hearing Officer (AHO) Marc Zylberberg in September 2003. OPMC's first witness, an expert radiologist, referred in his testimony to an investigative report regarding the mislabeled x-ray incident titled "New York Patient Occurrence Report and Tracking System Root Cause Analysis" (Root Cause Analysis). According to the Root Cause Analysis, the improper tube placement resulted from a multitude of factors, beginning with an x-ray technician's "poor judgment" and "initial failure to follow correct procedure" in mislabeling an x ray, which "created an environment in which all ensuing decisions were based on incorrect data." The report also faulted petitioner for not insisting on a third set of x rays to resolve a perceived labeling inconsistency and for not addressing certain "landmarks and/or artifacts" on the x ray which might have revealed the mistake.

During the hearing, petitioner's counsel complained to AHO Zylberberg that he had not been provided with a copy of the Root Cause Analysis, which he believed was exculpatory insofar as it blamed the technician for the initial labeling error, and demanded its production. Counsel for OPMC responded that petitioner had declined an offer to inspect the document and that it was not exculpatory in any event. Nevertheless, OPMC's counsel provided the document to petitioner at the hearing.

After an extended colloquy during which OPMC's counsel insisted that the Root Cause Analysis was not exculpatory, AHO Zylberberg directed OPMC to produce its entire investigative file for in camera inspection. The AHO concluded that in light of OPMC's position on the Root Cause Analysis, he no longer had confidence in OPMC's ability to recognize and disclose exculpatory material. In directing that OPMC produce its file for inspection, the AHO clarified that he was not ordering disclosure of the file, but rather he would review the documents in camera and then hear arguments from the parties on whether disclosure was appropriate.

On November 21, 2003, respondents wrote to AHO Zylberberg requesting that the in camera inspection be "canceled" on the ground that the Root Cause Analysis did not qualify as exculpatory evidence, as defined by the case law and a 1997 policy memorandum (1997 policy memo) issued by the Department of Health's General Counsel. A month later, respondents sent a second letter declaring that they would "not consent" to the in camera inspection because, under the applicable laws and regulations, petitioner had no "right" to discovery in an administrative proceeding. Respondents also argued that

notwithstanding the Department's voluntary policy of disclosing exculpatory material in its possession pursuant to the 1997 policy memo, the existence of this policy did not legally obligate OPMC to comply. Ultimately, respondents declined to comply with the AHO's order and requested that the hearing proceed without further delay.

Petitioner then commenced the instant article 78 proceeding seeking to compel OPMC to comply with the AHO's order to produce its file for in camera inspection. Petitioner further sought a stay of the administrative proceeding pending the outcome of the article 78 petition. Respondents opposed, arguing that mandamus relief was unavailable since there was no legal right to discovery in these administrative proceedings and because the AHO's directive was purely discretionary.

Supreme Court granted the petition for mandamus relief and a stay, directing OPMC to turn over its file to the AHO for in camera inspection. The court reasoned that petitioner had a "clear legal right" to enforcement of the AHO's order because the Public Health Law and applicable Department of Health (DOH) regulations gave the AHO the authority to rule on motions to compel discovery, and because the regulations expressly authorized limited discovery in cases such as this where the agency is seeking revocation of a physician's license. The court further held that the AHO's order was supported by respondents' admitted internal policy of disclosing any exculpatory material in its possession, defined as evidence "which contradicts material facts alleged by the Department or which otherwise tends to prove the innocence of an accused party."

On appeal, respondents argue that mandamus relief was unavailable to compel OPMC to comply with the AHO's directive to turn over its file because an adequate remedy existed in the form of an appeal from a final agency determination and because petitioner had no clear legal right to the relief requested. We agree with both arguments and dismiss the petition.

"It is a well settled principle of administrative law that one who objects to the acts of an administrative agency must exhaust available administrative remedies before being permitted to litigate in a court of law (*Matter of Doe v Axelrod*, 71 NY2d 484, 491 [Simons, J., concurring]; *Watergate II Apts. v Buffalo Sewer Auth.*, 46 NY2d 52, 57 [1978])" (*Galin v Chassin*, 217 AD2d 446, 447 [1995]). "Thus, absent extraordinary circumstances, courts are constrained not to interject themselves into ongoing administrative proceedings until final resolution of those proceedings before the agency" (*Doe v St. Clare's Hosp. & Health Ctr.*, 194 AD2d 365, 366 [1993], *lv denied* 82 NY2d 662 [1993]).

We reject petitioner's contention that the exhaustion requirement is inapplicable to article 78 petitions seeking relief in the nature of mandamus to compel (*see Matter of Legal Aid Socy. of Sullivan County v Scheinman*, 53 NY2d 12, 16 [1981] [mandamus to compel not available to obtain interlocutory relief in criminal proceeding where error can be reviewed on appeal]; *Matter of Haydock v Passidomo*, 121 AD2d 540, 541 [1986] [mandamus to compel will issue only in the absence of an adequate remedy at law]). Although courts have recognized that the exhaustion requirement may be relaxed in the context of mandamus or prohibition where a petitioner faces irreparable injury in awaiting ordinary avenues of review (*see Matter of City of Newburgh v Public Empl. Relations Bd. of State of N.Y.*, 63 NY2d 793, 795 [1984]), petitioner has failed to establish irreparable injury in these circumstances (*see Galin v Chassin*, 217 AD2d at 447 [allegation of bad faith by investigator was not extraordinary circumstance or irreparable injury justifying injunction against pending disciplinary proceeding]).

In fact, it is undisputed that even if petitioner had been required to go forward with the hearing without the in camera review, and the Committee had ultimately sustained findings of professional misconduct against him, he still would have been afforded the opportunity to seek administrative and judicial review of both the Committee's determination and his argument that OPMC's refusal to comply with the AHO's order deprived him of a fair hearing (*see* Public Health Law § 230 [10] [i]; CPLR 7803 [3]). Thus, petitioner has "an adequate remedy in his right to institute an article 78 proceeding following a final agency determination" (*Matter of Rainka v Whalen*, 73 AD2d 731, 732 [1979], *affd* 51 NY2d 973 [1980]).

Even if, as petitioner argues, the exhaustion requirement does not apply in these circumstances, he has failed to establish another important prerequisite to obtaining mandamus relief. "Fundamentally, mandamus is an extraordinary remedy, available, as against an administrative officer, only to compel the performance of a duty enjoined by law (*see, Klostermann v Cuomo*, 61 NY2d 525, 539-540)" (*Matter of Hachamovitch v Office of Professional Med. Conduct*, 227 AD2d 686, 687 [1996], *lv denied* 88 NY2d 814 [1996]). Accordingly, "article 78 relief in the form of mandamus to compel may be granted only where a petitioner establishes a 'clear legal right' to the relief requested (*Matter of Brusco v Braun*, 84 NY2d 674, 679 [1994])" (*Matter of Council of City of N.Y. v Bloomberg*, 6 NY3d 380, 388 [2006]).

In this case, Supreme Court found that petitioner had a clear legal right to enforcement of the AHO's order because it was

"issued in express accordance with the statutes, rules, regulations and policies governing the within administrative proceedings." In reaching this conclusion, the court relied on the express statutory powers granted to the AHO to rule on motions to compel disclosure (Public Health Law § 230 [10] [e]; 10 NYCRR 51.9 [b]), to conduct hearings in an impartial manner (10 NYCRR 51.9 [b]) and to punish a party who unreasonably fails to comply with a disclosure order (10 NYCRR 51.8 [b] [1], [3]). Essentially, the court found that because the AHO was statutorily empowered to rule on motions, OPMC was legally obligated to comply with such rulings. Therefore, petitioner had a "clear legal right" to compel their enforcement.

Respondents, on the other hand, rely on the nature of the underlying order issued by the AHO, to wit, a discovery order, to argue that no clear legal right exists to warrant mandamus relief. They note that notwithstanding the general powers of the AHO to rule on discovery motions and evidentiary requests, such general powers are expressly circumscribed by the DOH regulations which generally prohibit the AHO from ordering disclosure. Respondents contend that in light of the fact that the regulations generally do not permit discovery in these administrative proceedings, they were not obligated to comply with a clearly invalid order (see Matter of Schulz v State of New York, 86 NY2d 225, 232 [1995], cert denied 516 US 944 [1995] [where an order is manifestly lacking in validity, its disobedience cannot be punished]).

Respondents point to the DOH regulations, which expressly state that "[e]xcept as provided in subdivision (b) of this section or as otherwise agreed to by all parties, there shall be no disclosure" in these disciplinary proceedings (10 NYCRR 51.8 [a]). That same regulation also provides that "[a] hearing officer may not require disclosure" (10 NYCRR 51.8 [a]). Although Supreme Court correctly noted that subdivision (b) of section 51.8 does permit limited forms of discovery in cases where OPMC is seeking revocation of a physician's license (i.e., witnesses' names, a list and copies of documents intended to be introduced at the hearing and a brief description of other types of evidence), it overlooked the fact that the subdivision (b) does not mention exculpatory evidence, and, more importantly, it does not abrogate the general rule that an AHO may not order discovery in these proceedings. Notably, petitioner does not argue in his brief that the AHO's order in this case falls within the limited discovery exception found in subdivision (b). In light of the provisions limiting the authority of the AHO to order discovery, respondents' argument that the order was unlawful

and in excess of the AHO's power has sufficient merit to defeat mandamus relief.

Petitioner, however, relies on another exception in the regulations to the general prohibition on disclosure. This exception states: "When the parties *agree* to any form of disclosure, the hearing officer shall ensure that all parties proceed in accordance with *the agreement* of the parties" (10 NYCRR 51.8 [a] [emphasis added]). Petitioner's argument that a disclosure agreement existed between the parties to this proceeding is not persuasive. First, petitioner argues that the statement made by OPMC's counsel that "[o]bviously, we'll endeavor to comply," constitutes an enforceable agreement under 10 NYCRR 51.8 (a). However, this statement was not a voluntary agreement between the parties since it was made after the AHO had ordered the in camera disclosure, and thus was made under the perceived compulsion of the AHO. Moreover, the hearing transcript reveals that the statement was merely a preliminary acquiescence to the AHO's directive. Subsequent events make it clear that OPMC's official position was that it was opposed to the in camera order. Thus, even if an agreement could be found to have existed, it was clearly and unequivocally withdrawn by OPMC's counsel and no enforceable agreement existed under 10 NYCRR 51.8 (a).

Petitioner also relies on the 1997 policy memo announcing DOH's policy of disclosing exculpatory material to an accused as evidence of an enforceable agreement to disclose. The record, however, demonstrates that the DOH policy is only a "voluntary" internal policy that is "not required by statute, regulation or case law." An agreement to disclose between the "parties" requires assent by both petitioner and respondents, and such mutual assent is lacking here with respect to the disclosure ordered. There is no express agreement to disclose established in the record, nor can the policy be deemed a "standing agreement" with every physician subjected to disciplinary charges. The record, as it stands, shows no more than a gratuitous offer to disclose exculpatory material and no enforceable agreement under 10 NYCRR 51.8 (a) (*see Matter of Khan v New York State Dept. of Health,* 17 AD3d 938, 941 [2005] [gratuitous disclosure of exculpatory material did not waive confidentiality of undisclosed quality assurance records]).

In light of the absence of any statute or regulation expressly authorizing the AHO to order disclosure or in camera review of exculpatory evidence, and the existence of a general regulatory prohibition against ordering disclosure, petitioner has failed to demonstrate a "clear legal right" to enforcement of the AHO's

order and mandamus relief should not have been granted (*Hachamovitch*, 227 AD2d at 687 [no clear legal duty to act where no statutory or regulatory provision grants right to reopen]). The correctness of the AHO's order will be subject to full review after final determination in the administrative proceedings (*see* CPLR 7803 [1], [3]). Concur—Buckley, P.J., Tom, Saxe, Gonzalez and Malone, JJ.