■ In the Matter of WILLIAM J. GORMLEY, Petitioner, v NEW YORK STATE ETHICS COMMISSION, Respondent. [847 NYS2d 707]—

Carpinello, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of Supreme Court, entered in Albany County) to review a determination of respondent which found petitioner in violation of Public Officers Law § 73 (8) (a) (ii) and imposed a fine of $3,500.

In April 1995, petitioner left state service after 21 years with the Department of Health. During his later years with the Department, he served in various senior management positions. Included among his primary duties was the promulgation of Medicaid reimbursement rates for nursing homes. As particularly relevant here, he served as the executive director of a project that developed and implemented the state's "RUGS-II case mix reimbursement system."[1] This system, while amended and adjusted over the years, continues to be used to set reimbursement rates for nursing homes.

In 2004, petitioner was hired to perform a cost-to-rate analysis on behalf of western New York nursing home litigants embroiled in a lawsuit with the Department, along with another state agency, over the adequacy of the Medicaid reimbursement rates. In the course of this litigation, in which the petitioning nursing homes were alleging that the Department's rate-setting methodology irrationally relied on outdated and unrepresentative 1983 costs (see Matter of Nazareth Home of the Franciscan Sisters v Novello, 7 NY3d 538, 542 [2006]), petitioner submitted an affidavit which is at the heart of the instant dispute. Specifically, certain averments contained in this affidavit prompted an investigation by respondent that petitioner violated Public Offi-

---

1. RUGS, which is an acronym for "Resource Utilization Groups," is a system for classifying residents of a nursing home based on the cost of care and acuity of these residents. "RUGS II" refers to the second version of this system which was developed and implemented between 1983 and 1986 under petitioner's tutelage.

cers Law § 73 (8) (a) (ii), referred to as the "lifetime bar" provision. After a hearing, a Hearing Officer found that petitioner violated the statute and recommended that he be assessed a $3,500 civil penalty. Respondent adopted the Hearing Officer's findings and recommendation prompting this CPLR article 78 challenge, which has been transferred to this Court (*see* CPLR 7804 [g]).

Upon our review of the record, we are satisfied that substantial evidence supports respondent's determination (*see* CPLR 7803 [4]). As relevant here, the lifetime bar provision prohibits a former state employee from rendering compensated services "in relation to any case, proceeding, application or transaction with respect to which such person was directly concerned and in which he or she personally participated during the period of his or her service or employment" (Public Officers Law § 73 [8] [a] [ii]; *see Matter of McCulloch v New York State Ethics Commn.*, 285 AD2d 236, 242 [2001]). The evidence in this proceeding establishes that petitioner was directly involved with the development of the RUGS-II reimbursement system while employed with the Department. It further establishes that, fol-· lowing his cessation of state service, he was compensated for submitting an affidavit on behalf of nursing home litigants in which he touted his role in creating this system and then relayed insider knowledge about its overall scheme.[2] Specifically, petitioner averred: "[T]he RUGS-II system was designed to utilize the 1983 base for multiple years. *The term 'multiple years' was used at this time as a signal to the nursing homes that base years would not move virtually every year as had been the history since the inception of the New York State Medicaid program* . . . The exact number of years to maintain the same base year was never specified in policy or regulation during the 1983 to 1986 development and implementation time frame. *However, it is truly surprising that the 1983 base year has been in place for twenty-one years considering that the longest timeframe for utilizing a base prior to 1986 was just two years. I never envisioned or intended the base year to continue in perpetuity or to ever last as long as it has*" (emphasis added).

By including the italicized statements in his affidavit, petitioner was most assuredly "taking unfair advantage of [his] insider's knowledge and contacts, including the confidences and secrets [he] may have gained while working on [the RUGS-II system] on behalf of the State" (*Forti v New York State Ethics*

---

**2.** In so doing, petitioner was obviously attempting to assist these litigants in proving their claim that the Department was irrationally relying on outdated costs in setting reimbursement rates.

*Commn.*, 75 NY2d 596, 611 [1990]). In other words, by submitting an affidavit to a court in an attempt to assist litigants challenging the rationality of the RUGS-II methodology that he himself developed and including in such affidavit statements expressing his personal intentions in so developing this system, petitioner received compensation for services rendered in relation to a "transaction" with which he was directly involved while employed by the Department, thereby establishing a clear violation of the statute (*see Matter of McCulloch v New York State Ethics Commn., supra*).

Moreover, we find that evidence of such a flagrant violation of the statute also justified the imposition of the civil penalty. In other words, we are unpersuaded that the record lacks substantial evidence to support respondent's finding that petitioner knowingly and intentionally violated the statute such that a civil penalty was permitted (*see* Public Officers Law § 73 former [14], currently renumbered [18]). To this end, petitioner was certainly aware of the restrictions outlined under Public Officers Law § 73 (8) (a) (ii), because respondent explicitly reminded him of same in 1996, when he sought to be excepted from another provision of the statute. In a letter dated February 15, 1996, respondent informed petitioner that he "may not work on any case, proceeding, application or transaction on which [he] worked while in [s]tate service" and further advised him that additional information on "these restrictions" could be obtained by contacting it. In sum, given proof in the record that petitioner knowingly and intentionally submitted an affidavit to a court that he knew related to a matter (i.e., the RUGS-II system) with which he was directly involved during his state service and that clearly contained insider information about such matter that he could only have garnered through such former state service (i.e., that there was no intent for the Department to use the 1983 base year for as long as it had been doing), we find that substantial evidence supports the $3,500 civil penalty under Public Officers Law § 73 former (14).

As a final matter, we reject petitioner's argument that, as a former state employee, respondent lacked jurisdiction over him to enforce the lifetime bar provision of Public Officers Law § 73 (8) (a) (ii). While the Court of Appeals found merit to a like jurisdictional argument made by a former state employee in *Matter of Flynn v State Ethics Commn., Dept. of State, State of N.Y.* (87 NY2d 199, 205 [1995]), that employee was charged under Public Officers Law § 73 (5) and not, as expressly distinguished by the Court, the statute at issue here. Indeed, the Court of Appeals noted that Public Officers Law § 73 (8)

"by its essential nature, necessitates jurisdiction over former employees and officers" (*id.*).

Crew III, J.P., Spain, Rose and Lahtinen, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.