[900 NE2d 943, 872 NYS2d 392]

In the Matter of WILLIAM J. GORMLEY, Appellant, v NEW YORK STATE ETHICS COMMISSION, Respondent.

Argued October 14, 2008; decided November 24, 2008

**POINTS OF COUNSEL**

*O'Connell and Aronowitz,* Albany (*Cornelius D. Murray* of counsel), for appellant. I. Public Officers Law § 73 (8) (a) (ii) does not prohibit a former state employee from submitting an affidavit to a court of law. (*Ivey v State of New York,* 80 NY2d 474; *Matter of McCulloch v New York State Ethics Commn.,* 285 AD2d 236; *Forti v New York State Ethics Commn.,* 147 AD2d 269, 75 NY2d 596; *People v Byron,* 17 NY2d 64.) II. Assuming, arguendo, there was a violation, the New York State Ethics Commission had the burden of proving that appellant knowingly and intentionally violated the Public Officers Law. (*Ivey v State of New York,* 80 NY2d 474; *Matter of Doxen v Wack,* 175 Misc 2d 326; *Ratzlaf v United States,* 510 US 135.) III. There was no substantial evidence in the record to support the finding that appellant knowingly and intentionally violated Public Officers Law § 73 (8). (*People v Alamo Rent A Car,* 174 Misc 2d 501; *United States v Golitschek,* 808 F2d 195; *Liparota v United States,* 471 US 419; *Arthur Andersen LLP v United States,* 544 US 696; *Matter of Valvo [Ross],* 83 AD2d 344, 57 NY2d 116; *Matter of Maguire [Ross],* 54 NY2d 965; *Matter of Smith [Ross],* 78 AD2d 961; *People v Patterson,* 39 NY2d 288, 432 US 197; *Matter of McCulloch v New York State Ethics Commn.,* 184 Misc 2d 546, 285 AD2d 236; *Matter of Doxen v Wack,* 175 Misc 2d 326.)

*Andrew M. Cuomo, Attorney General,* Albany (*Julie M. Sheridan, Barbara D. Underwood* and *Andrea Oser* of counsel), for respondent. I. The lifetime bar extends to covered services rendered in courts as well as state agencies where, as here, those services are rendered for compensation. (*Forti v New York State Ethics Commn.,* 75 NY2d 596; *McDougald v Garber,* 73 NY2d 246; *People v Giordano,* 87 NY2d 441; *Sanders v Winship,* 57 NY2d 391; *Matter of Branford House v Michetti,* 81 NY2d 681; *Matter of Rodriguez v Perales,* 86 NY2d 361; *Matter of Smathers,* 309 NY 487; *Matter of McCulloch v New York State Ethics Commn.,* 285 AD2d 236; *Matter of Doxen v Wack,* 175 Misc 2d 326; *Samiento v World Yacht Inc.,* 10 NY3d 70.) II. A

civil penalty is authorized where, as here, an individual knowingly and intentionally engages in conduct which is in fact prohibited. (*Matter of Rubenfeld v New York State Ethics Commn.,* 43 AD3d 1195; *People v Shapiro,* 4 NY2d 597; *Bryan v United States,* 524 US 184; *People v Coe,* 71 NY2d 852; *Kolstad v American Dental Assn.,* 527 US 526; *United States v Murdock,* 290 US 389; *Arthur Andersen LLP v United States,* 544 US 696; *Liparota v United States,* 471 US 419; *People v Alamo Rent A Car,* 174 Misc 2d 501; *Matter of Otis E. Serv. v Hudacs,* 185 AD2d 483.)

## OPINION OF THE COURT

JONES, J.

The issue before this Court is whether imposition of a civil penalty under Public Officers Law § 73 (18) required the New York State Ethics Commission to prove that petitioner knew the conduct was prohibited and acted intentionally to violate the statute. We conclude that the Commission was not required to make such a showing.

Petitioner worked for the New York State Department of Health (DOH) from 1973 to 1995. During petitioner's 22-year tenure, he held various senior management positions and served as executive director of a project that developed and implemented New York's RUGS-II case mix reimbursement system—a system used to determine Medicaid reimbursement rates for nursing homes. Petitioner established a health care consulting firm in 1997 and, in 2004, was paid $11,880 by a group of nursing homes to prepare an expert affidavit to support their litigation challenging the RUGS-II system (*see Matter of Nazareth Home of the Franciscan Sisters v Novello,* 7 NY3d 538 [2006]).

In his affidavit, petitioner stated, among other things:

> "I served as Executive Director of the project that first developed and implemented the State's RUGS-II case mix reimbursement system for nursing facilities . . .
>
> "OVERVIEW OF THE STATE'S RUGS-II REIMBURSEMENT SYSTEM . . .
>
> "While the use of a 1983 base year was utilized in the original RUGS-II reimbursement system when first implemented in 1986 (since 1983 was the most recent rate year in which costs were available), the

RUGS-II System was designed to utilize the 1983 base for multiple years. The term 'multiple years' was used at this time as a signal to the nursing homes that base years would not move virtually every year as had been the history since the inception of the New York State Medicaid program . . .

"The exact number of years to maintain the same base year was never specified in policy or regulation during the 1983 to 1986 development and implementation timeframe. However, it is truly surprising that the 1983 base year has been in place for twenty-one years considering that the longest timeframe for utilizing a base prior to 1986 was just two years. *I never envisioned or intended the base year to continue in perpetuity or to ever last as long as it has*" (emphasis added).

In November 2004, the Commission notified petitioner that it had received information indicating that he may have violated the lifetime bar under Public Officers Law § 73 (8) (a) (ii) by executing that affidavit.* Following an initial investigation and a hearing, the Commission determined that, while petitioner's empirical analysis on Medicaid reimbursement shortfalls for the Erie Region nursing homes was permissible (because "knowledge and methodologies developed while an individual was in State service may be applied in new settings after the individual has left State service"), his statement about his intentions regarding the applicability of the 1983 base year violated the lifetime bar because it took "unfair advantage of his insider's knowledge." The Commission imposed a civil penalty of $3,500 under Public Officers Law § 73 (18) (the civil penalty provision [former Public Officers Law § 73 (14)]), rejecting petitioner's argument that the language "knowingly and intentionally" in the statute required the Commission to show that petitioner knew his actions violated the law.

---

* The lifetime bar provides that a state employee shall not
"after the termination of [state] service or employment [1] appear, practice, communicate or otherwise render services before any state agency or [2] receive compensation for any such services rendered . . . on behalf of any . . . entity in relation to any case, proceeding, application or transaction with respect to which such person was directly concerned and in which he or she personally participated during the period of his . . . service or employment, or which was under his or her . . . active consideration" (Public Officers Law § 73 [8] [a] [ii]).

Petitioner commenced the instant CPLR article 78 proceeding challenging the Commission's determination. After a transfer from the Supreme Court pursuant to CPLR 7804 (g), the Appellate Division found that substantial evidence supported both the Commission's determination that the lifetime bar had been violated and imposition of the civil penalty, and dismissed the petition (46 AD3d 1078 [2007]). This Court granted petitioner leave to appeal (10 NY3d 705 [2008]). Thereafter, petitioner conceded that his conduct violated the lifetime bar, but continues to contest the civil penalty. We now affirm.

Public Officers Law § 73 (18) provides that "any person who *knowingly and intentionally* violates the provisions of subdivision[ ] . . . eight . . . shall be subject to a civil penalty" (emphasis added). The civil penalty provision traces its origins back to Penal Law § 1878 (L 1954, ch 695, § 2) where a violation of the then two-year ban was a criminal misdemeanor. In 1965, the provision was moved to Public Officers Law § 73 and the language "knowingly and intentionally" was added to the misdemeanor statute (L 1965, ch 1012, § 3). Amendments in 1987 changed the statute into a civil penalty provision but kept the "knowingly and intentionally" language (L 1987, ch 813, § 2). Finally, in 2007 the statute was renumbered as subdivision (18) of section 73 of the Public Officers Law and the maximum civil penalty was raised to $40,000 (L 2007, ch 14, § 27).

Given the history of the statute, plainly the Penal Law lends guidance in construing Public Officers Law § 73. The Penal Law provisions defining "knowingly" and "intentionally" normally require only that petitioner knew of and intended to engage in the conduct. "A person acts knowingly with respect to conduct or to a circumstance . . . when he is aware that his conduct is of such nature or that such circumstance exists" (Penal Law § 15.05 [2]). Under Penal Law § 15.05 (1), "[a] person acts intentionally with respect to . . . conduct . . . when his conscious objective is to . . . engage in such conduct." Neither mental state requires petitioner to have knowledge of the illegality of his conduct or to have the conscious objective to violate the statute; the requirement that petitioner be aware that his conduct was illegal is normally embodied in the term "willfully" (*see Bryan v United States*, 524 US 184, 193 [1998]; *People v Coe*, 71 NY2d 852, 854-855 [1988]).

While petitioner argues that "knowingly" has, in certain cases, required a showing beyond that stated in Penal Law § 15.05 (2), those cases involved different statutory language

and legislative history than that of the instant case (*see e.g. Arthur Andersen LLP v United States*, 544 US 696, 698 [2005] [statutory language "knowingly . . . corruptly persuad(e)"]; *Liparota v United States*, 471 US 419, 426 [1985] [food stamp statute criminalized a broad range of "apparently innocent conduct"]). Moreover, petitioner's construction of the statute would allow a former state employee to escape liability simply by remaining ignorant of the law and would impede the enforcement of the lifetime ban and other prohibitions in Public Officers Law § 73.

In this case, petitioner conceded that his actions constituted a violation of the lifetime bar provision. To impose a civil penalty, the Commission needed only to show that petitioner was aware of the nature or circumstances regarding the submission of the expert affidavit on the RUGS-II system, a matter in which he personally participated, and had the conscious objective to prepare the expert affidavit. The Commission did not need to show that petitioner knew the statements in the affidavit violated the lifetime ban or that he purposely acted to violate the law.

Accordingly, the judgment of the Appellate Division should be affirmed, with costs.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO, READ, SMITH and PIGOTT concur.

Judgment affirmed, with costs.