E.M. v Conifer LLC (2024 NY Slip Op 24012)

[*1]

E.M. v Conifer LLC

2024 NY Slip Op 24012

Decided on January 17, 2024

City Court Of Ithaca, Tompkins County

Peacock, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on January 17, 2024
City Court of Ithaca, Tompkins County

E.M., Claimant,

against
Conifer LLC, The Overlook Apartments, Defendant.

Docket No. SC-49515-23

Seth J. Peacock, J.

BACKGROUND
This action involves Claimant's termination of her lease at Overlook apartments in 2022 and relocation away from Tompkins County. Claimant moved into Overlook apartments in November 2021, shortly after giving birth to her son. She received Section 8 rental assistance and was responsible for $271.00 of the rent. There is no evidence that Claimant ever faced eviction at any point in her tenancy. Her lease expired and her tenancy became a month-to-month tenancy after October 31, 2022.
In October, an employee for Defendant named Elizabeth Lust reviewed a police report that documented domestic violence perpetrated against Claimant by the father of Claimant's son. The father was incarcerated in connection with the domestic violence. Claimant testified that because of the domestic violence, she sought to "port out" of her unit to another county. This means that she was trying to relocate out of Tompkins County with her Section 8 rental assistance.
Claimant emailed Ms. Lust on May 8, 2023 and mentioned "being harassed by my child's father" and stated, "I am asking for intent to vacate documentation." On May 15, 2023, Claimant submitted to Defendant a "Notice to Vacate" in which she gave as her reason for the move, "Overlook has yet to provide new lease for 6+ months."
Claimant also emailed Ms. Lust on May 17, 2023 at 11:09 AM, "Good morning, you can list the move out date as May 30th if Overlook allows it, I have a landlord waiting on these documents."
Ms. Lust emailed Claimant on May 17, 2023 at 12:05 PM, "Hi again, Due to move out policies and requirements we can approve June 30th." In other words, Defendant would only permit Claimant to move out in 44 days.
On May 17, 2023 at 2:39 PM, Claimant emailed Ms. Lust, "I only need 30 day notice. And I don't have any bonding lease that ties me to conifer. What's the policy and requirement to get the money that's owed to me?"
At 2:49 PM, Ms. Lust emailed Claimant, "We accept notices as of the first of the month and if it's not received as of the first of the month we require it to be of the first of the following month. Conifer policy states that we require a 60 day notice but we are making an exception for a 30 day within restriction."
Later that day, at 5:25 PM, Claimant sent the following email to Ms. Lust:
Good afternoon, it does not. Documents you provided states only 30 days not 60. Under the DVA conifer is putting my children and me in harms way. I want everyone to understand that if my sons father harms me and my children this falls on all of you. I have expressed concerns for months with no assistance has had to figure this out myself! Have your boss as well reach out to me Elizabeth.
This Court understands "DVA" to mean "Domestic Violence Act." Although Claimant did not mention the VAWA explicitly, the meaning of Claimant's email is clear: Claimant was stating that she is a victim of domestic violence, was requesting to be released from her lease, and needed her rental assistance to be "ported out" to a new apartment pursuant to the VAWA transfer provisions.
On or about May 21, 2023, the Advocacy Center sent Defendant a letter stating, "Ms. [REDACTED] and her children would benefit greatly from relocating their housing in order to increase their safety." The Advocacy Center is a victim service provider in Tompkins County from whom Claimant sought assistance relating to domestic violence.
Claimant testified, and Defendant did not controvert, that she had offers of monetary relocation assistance from the Department of Social Services and the Advocacy Center. However, she was unable to "port out" in a timely fashion due to Defendant's delay regarding her VAWA transfer request. Thus, the relocation assistance was no longer available by the time she was finally able to move in July 2023. She had to pay a broker's fee of $3459.00, a security deposit for the new apartment in the amount of $2883.00, first month's rent, and $341.00 for a U-Haul truck rental, all of which would have been covered by the assistance from the Department of Social Services and the Advocacy Center.
On June 9, 2023, Claimant filed this small claim action. She asserted a violation of VAWA and a failure to make repairs.

VIOLENCE AGAINST WOMEN ACT
The Violence Against Women Act (VAWA) is a federal statute found at 34 U.S.C. § 12491. Under 34 U.S.C. § 12491(e)(1), a tenant who is a victim of domestic violence may seek an emergency transfer to another assisted housing unit if:
(A) the tenant expressly requests the transfer; and
(B) (i) the tenant reasonably believes that the tenant is threatened with imminent harm from further violence if the tenant remains within the same dwelling unit assisted under a covered housing program; or
(ii) in the case of a tenant who is a victim of sexual assault, the sexual assault occurred on the premises during the 90 day period preceding the request for transfer
The Court finds that requirements of subparagraphs (A) and (B)(i) of 34 U.S.C. § 12491(e)(1) were satisfied here.
Defendant insists that Claimant did not fill out the form provided to her. But under 34 U.S.C. § 12491(c)(1) and 34 U.S.C. § 12491(c)(3)(A)(ii), Defendant was only entitled to request additional documentation if Claimant sought "protection under subsection (b)," which states that a tenant "may not be denied admission to, denied assistance under, terminated from participation in, or evicted from the housing on the basis that the applicant or tenant is or has been a victim of domestic violence 
...." Claimant did not seek protection from eviction under 34 U.S.C. § [*2]12491(b). Claimant sought an emergency transfer under 34 U.S.C. § 12491(e), which contains no documentation requirement. Nonetheless, the Advocacy Center, which is a victim service provider from whom Claimant sought assistance relating to domestic violence, sent a document to Defendant on May 21, 2023.
The Court finds that 24 C.F.R. § 5.2005(e)(10), which sets forth the regulatory documentation requirements for emergency transfers under the VAWA, was satisfied by Claimant. That regulation requires no form. Indeed, 24 C.F.R. § 5.2005(e)(10)(iii) states, "No other documentation is required to qualify the tenant for an emergency transfer." The Court also stresses that the regulation also appears to contemplate immediate action, without any regard for a 30 or 60 day notice period. 24 C.F.R. § 5.2005(e)(5)-(8) (discussing "immediately available" safe units). It is important for landlords to understand the need for immediacy under the VAWA's transfer regulations. When a tenant seeks to relocate because of domestic violence, time is often of the essence. It is unacceptable for a landlord to place its lease termination policy above the safety of domestic violence victims and the laws meant to promote that safety.
If it were not for the need to transfer Claimant's rental assistance to her new apartment, Claimant might have simply chosen to leave Overlook apartments early to take advantage of the moving assistance offered to her. However, Claimant needed to "port out" with her rental assistance under the VAWA, which required Defendant's permission. It was thus not possible for Claimant to leave Overlook apartments without Defendant's permission. Because Defendant did not act in a timely fashion when it was legally obligated to do so, the moving assistance that had been offered to Claimant was no longer available by the time she finally relocated.

 REAL PROPERTY LAW § 227-c
The Violence Against Women Act is not the only statute that is relevant here. New York's Real Property Law § 227-c is a state statute that also provides protection for victims of domestic violence. It permits a tenant who is a victim of domestic violence "to terminate such lease or rental agreement and quit and surrender possession of the leasehold premises and the land so leased or occupied pursuant to the provisions of this section and to be released from any liability to pay to the lessor or owner, rent . . . for the time subsequent to the date of termination of such lease . . . ." RPL § 227-c(1).
To terminate a lease under RPL § 227-c, the tenant must deliver a written notice to the landlord which specifies a date no earlier than thirty days after such notice is delivered. RPL § 227-c(2)(a). RPL § 227-c(3) also states that a tenant terminating her lease "shall pay rent, pro-rata, up to the lease termination date pursuant to this section." These two provisions make it clear that a landlord may not force a tenant to wait until the first of a month to give notice. Claimant's May 17 emails repeatedly and correctly asserted that she only had to give a 30 day notice. The Court finds that she gave a 30 day notice to Defendant.
A tenant must also state that she has experienced domestic violence and reasonably believes that she is unable to safely remain in the premises as a result of the domestic violence. RPL § 227-c(2)(b). Claimant's May 17 email, sent at 5:25 PM, clearly satisfies this requirement.
Within twenty-five days of the notice, the tenant must also provide documentation demonstrating that she has been a victim of domestic violence. RPL § 227-c(2)(c). This documentation may be a written verification from a non-profit service that provides domestic violence services. RPL § 227-c(2)(c)(iv)(A). The Court finds that the May 21 letter from the Advocacy Center is adequate documentation under RPL § 227-c(2)(c). RPL § 227-c(2)(c)(iv)(B) states that a sworn or notarized statement shall be satisfactory written verification, but that [*3]provision does not require that the written verification be sworn or notarized. Likewise, the forms provided in RPL § 227-c(2) are explicitly "not required" by the terms of the statute. RPL § 227-c(2)(d).
"Landlords who knowingly, or intentionally violate any part of this section may be liable for liquidated damages, not to exceed one thousand dollars, actual damages, costs and attorneys' fees." RPL § 227-c(6)(a). To act "knowingly" or "intentionally" normally requires "only that petitioner knew of and intended to engage in the conduct." Gormley v New York State Ethics Com'n, 11 NY3d 423, 427 (2008). "Neither mental state requires [Defendant] to have knowledge of the illegality of his conduct or to have the conscious objective to violate the statute; the requirement that [Defendant] be aware that his conduct was illegal is normally embodied in the term 'willfully.'" Id. Defendant in this case may not have been aware of RPL § 227-c. Certainly, there was no testimony regarding RPL § 227-c elicited at trial. But RPL § 227-c's liability provision does not require that a landlord act "willfully" to violate the statute; it only requires that his conduct be knowing or intentional (in other words, not an accident). 
Defendant intentionally imposed a termination date on Claimant that was beyond her stated 30 day notice period. On May 17, Ms. Lust stated in an email to Claimant, "We accept notices as of the first of the month and if it's not received as of the first of the month we require it to be of the first of the following month." This lease termination policy does not comply with RPL § 227-c(2) and (3). Defendant is thus liable for liquidated and actual damages under RPL § 227-c(6).
The Court notes that RPL § 227-c formerly required a tenant to obtain an order of protection and a court order to terminate her lease early, and the statute previously had no damages provision. However, in December 2019, the current version of the statute went into effect. The 2019 amendment to RPL § 227-c evinces a legislative intent to strengthen the protections afforded to domestic violence victims and hold liable any landlords who violate the statute's provisions.

HARMONIZING THE VAWA AND RPL § 227-c
The VAWA and 24 C.F.R. § 5.2005(e)(5)-(8) seem to contemplate immediate action when it comes to transferring or "porting out" rental assistance to a different unit. On the other hand, RPL § 227-c contemplates a notice period of at least 30 days before a lease may be terminated. These two statutes are not incongruous.
In situations where a Section 8 tenant seeks to "port out" her rental assistance to another unit and terminate her current lease, a landlord should act as soon as possible under the VAWA and its regulations. RPL § 227-c does not give a landlord the right to delay acting on a VAWA transfer request. Rather, RPL § 227-c simply limits a tenant's rent liability to the effective termination date. RPL § 227-c(3)(c). The tenant is free to relocate as soon as she is able; she would just be liable for rent up to the termination date.
However, in this case, the landlord's unlawful delay in terminating Claimant's lease also meant a delay in "porting out" Claimant's Section 8 rental assistance. Without her rental assistance "porting out," Claimant was not even able to relocate. She could not choose to move and pay rent, pro-rata, up to her 30 day termination date as contemplated by RPL § 227-c.

DAMAGES
"The person responsible for the injury must respond for all damages resulting directly from and as a natural consequence of the wrongful act according to common experience and in the usual course of events, whether the damages could or could not have been foreseen by him. [*4]The damages cannot be remote, contingent or speculative. They need not be immediate, but need to be so near to the cause only that they may be reasonably traced to the event and be independent of other causes." Steitz v Gifford, 280 NY 15, 20 (1939); see Poulos v Badala, 227 AD2d 118, 119 (1st Dept 1996) (homeowners could recover credit card finance charges as damages in negligence action against contractor because the finance charges could "be clearly traced to defendant's wrongdoing"); see also Ever Win, Inc. v 1-10 Indus. Assoc., 111 AD3d 884, 886 (2d Dept 2013) (in negligence action against landlord, tenant could recover lost profits caused by flood damage to tenant's goods where the goods were already under contract for a specified price and awaiting delivery.)
The Court credits Claimant's testimony regarding the damages she sustained because of Defendant's unlawfully imposed delay. Public assistance generally has long wait lists, and a tenant who is unable to take assistance when it is offered will often forfeit it to someone else who needs it. Claimant forfeited the relocation assistance offered to her because she had to wait for Defendant's permission to "port out" with her Section 8 rental assistance. But for Defendant's failure to comply with RPL § 227-c and the VAWA, Claimant would have had relocation assistance and would not have had to pay the following costs associated with her move: a broker's fee of $3459.00, a security deposit of $2883.00 for the new apartment, first month's rent, and $341.00 to rent a U-Haul truck.

 CONCLUSION
Judgment is for Claimant in the amount of $5000.00, plus costs.
This constitutes the Decision and Order of the Court entered upon notice to both parties. A notice of appeal, if applicable, must be filed within thirty (30) days of service of this Decision and Order.
SO ORDERED.
Dated: January 17, 2024
Seth J. Peacock
Ithaca City Court Judge